Per Curiam :
This case was referred to Trial Commissioner Donald E. Lane with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in an opinion and report filed on January 17,1966. Thereafter, on March 7, 1966, the parties filed a stipulation wherein it was stipulated and consented that the opinion, findings of fact and recommended conclusion of law in the report be adopted as the opinion, findings of fact and conclusion of law of the court. • It was further stipulated that there be entered judgment for the plaintiff in the amount of three thousand dollars ($3,000), as reasonable and entire compensation (including interest) for all unlicensed use and manufacture by or for the defendant of the invention described and claimed in U.S. patent No. 2,803,413, and as payment from defendant to plaintiff for a paid-up, nonexclusive, *647 irrevocable, nontransferable, royalty-free license to practice, and canse to be practiced for the defendant throughout the world for governmental purposes in the manufacture, use and disposition according to law, of any article or material, and in the use of any method, the invention disclosed and claimed in U.S. patent No. 2,803,413. Since the court agrees with the trial commissioner’s findings, opinion and recommended conclusion of law, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case without oral argument. The opinion and conclusion of the trial commissioner accord with the principles announced by the Supreme Court in Graham, et al. v. John, Deere Company of Kansas City, et al., 383 U.S. 1, and United States v. Adams, 383 U.S. 39, October Term, 1965, all decided February 21, 1966. Plaintiff is, therefore, entitled to recover and judgment is entered for plaintiff with the amount of recovery to be in accordance with the stipulation of the parties submitted after the commissioner’s recommendation that the amount of recovery be determined under Pule 47(c) (2), as previously set forth.
OPINION op Commissioner*
Lane, Commissioner: This is a patent suit under Title 28 U.S.C. § 1498 for just and entire compensation for the unauthorized use of plaintiff’s patented inventions by the defendant. It is found that the selected claims of Letters Patent Nos. 2,750,449, 2,743,319, 2,826,642, 2,845,495, and 2,915,595 are invalid, and that the selected claims of Letters Patent No. 2,803,413 are valid and have been used without authorization in defendant’s KD-115B/UN sound recorder-reproducer equipment. The patent claims in suit, the pertinent structures of the accused sound recorder-reproducers and associated equipments, and the prior art items urged by defendant are set forth in full detail in the accompanying findings of fact. The parties have agreed to a separation of the issues for trial. The questions of validity, infringement, and license are now before the court.
Plaintiff is a corporation organized and existing under the laws of the State of Connecticut and is the record owner *648 of entire right, title, and interest in and to the following patents in suit:
PATENTS AND PATENT CLAIMS IN SUIT
No. Patentee Year Claims
2,750,449 Thompson, et al.. 1956 6,15,16, and 18.
2,743,319 Thompson, et al.. 1956 1, 2, 3, 8, 9,11, and 12.
Lyon. 1957 1 and 2.
2,826,642 Lyon, et al_ 1958 1 and 2.
2,845,495 Lyon. 1958 7, 8, and 9.
2,915,595 Lyon_ 1959 1, 3, and 4.
The above-listed patents will hereinafter be referred to as the '449, '819, '413, '642, '495, and '595 patents.
The patents in suit relate to long-playing magnetic sound recorder-reproducer apparatus and to devices used in conjunction with sound recording. The '449 and '319 patents are directed to magnetic sound recorder-reproducers wherein a plurality of transducer elements is carried on the end face of a rotatable drum having its axis of rotation perpendicular to the direction of movement of a relatively wide magnetic tape. The transducer elements are adapted to contact the tape as the drum rotates under the moving tape so as to form a plurality of arcuate tracks across the width of the tape. The transducer elements produce magnetic tracks to record information on the tape and also serve to pick up from the tape the recorded information for reproduction. The '495 and '595 patents relate to drum type recorder-reproducers which utilize a plurality of transducer heads disposed about the peripheral surface of rotatable drum having its axis of rotation parallel to the direction of tape travel. The transducer heads of the '495 and '595 patents contact the tape and describe a plurality of parallel transverse tracks at substantially right angles to the longitudinal axis of the tape. The '319 patent relates to a reel clamp and handle combination while the '642 patent is directed to a bulk magnetic tape eraser or demagnetizer.
Although the field of magnetic recording-reproducing utilizing the principles of arcuate or transverse tracks is not a greatly crowded field, the patents in suit are not pioneer patents. The elements comprising the combinations claimed *649 in the selected patent claims in suit are, in the majority, individually old and well known in the art of recording for the same purpose and function for which the patentees herein have used them.
Defendant has raised a number of defenses to plaintiff’s charge of unauthorized use, asserting: that the claims in suit are invalid in view of the prior art; that the alleged invention defined in claim 6 of the '449 patent is invalid because it had been known to or used by others in this country prior to the invention thereof; that plaintiff is estopped to charge infringement of claim 6 of the '449 patent because plaintiff disclaimed a claim in the '449 patent which is dependent upon claim 6; and that defendant is entitled to a license and/or related rights under the '495 and '595 patents in suit and the alleged inventions covered thereby.
The specific prior art items relied upon by defendant in its defense of invalidity of the patent claims in suit are set forth more fully in the following findings of fact. By statute, 35 U.S.C. § 282, a patent issued by the Patent Office is presumed valid, and the burden of establishing invalidity is on the party asserting it. But this presumption may be dispelled, especially by reference to pertinent prior art which was not considered by the Patent Office. See Scripto, Inc. v. Ferber Corporation, 267 F. 2d 308, 121 U.S.P.Q. 339 (3d Cir. 1959), cert. denied, 361 U.S. 864. Such is the case of the prior art items relied upon most heavily by defendant herein.
The test for patentability under 35 U.S.C. § 103 has been aptly stated by Judge Pence in Griffith Rubber Mills v. Hoffar, 313 F. 2d 1, 3, 136 U.S.P.Q. 334, 336-337 (9th Cir. 1963), as follows:
Patents are issued not for private benefit but for the public good; they grant a monopoly for a limited period as an incentive to the disclosure of innovations which in the end will add to the fund of freely available knowledge. However, the public is entitled to benefit, without granting special concessions, from such advances as normally flow from the application of the ordinary skills of one in the trade to the existing fund of public knowledge. Thus the statute prescribes, as a condition of patentability, that what has been accomplished *650 must be such that it would not have been obvious to a hypothetical person skilled in all that could have been known, at the pertinent time, in the field to which the invention relates.
It follows that though a device may be new and useful it is not patentable if it consists of no more than a combination of ideas which are drawn _ from the existing fund of public knowledge, and which produces results that would be expected by one skilled in the art.
The prior art patents and publications relied upon by defendant clearly show that the elements recited in the selected claims of the '449, '319, '642, '495, and '595 patents were well known in the magnetic recording art both individually and in various combinations. It is found that these claims recite mere aggregations of elements old in the art which produce no unexpected result and are therefore invalid. The test under 35 U.S.C. § 103 requires a determination of obviousness at the time the invention was made. This determination is not to be made through hindsight.
Defendant has contended that the work of one Marvin Camras constituted prior knowledge and use by another in this country of the alleged invention defined in claim 6 of the '449 patent, a bar to patentability under 35 U.S.C. § 102. During 1949 and the period following, Camras worked on apparatus for recording and reproducing video signals used in television. His efforts ultimately culminated in a patent relating to a means for recording and reproducing video signals. The Camras patent application was filed subsequent to the filing of the '449 patent application and is therefore not available as an anticipatory reference against claim 6 of the '449 patent. To constitute an anticipation, all of the elements recited in the claim or their equivalents must be found in one unit of the prior art. See Firestone v. Aluminum Co. of America, 285 F. 2d 928, 127 U.S.P.Q. 407 (6th Cir. 1960). Prior knowledge and use must be public knowledge and use, that is, it must have been accessible to the public. One who relies on prior knowledge and use to defeat patentability must sustain such anticipation by clear and convincing proof. See Consolidated Electrodynamics Corp. v. Midwestern Instruments, Inc., 260 F. 2d 811, 119 U.S.P.Q. 231 (10th Cir. 1958). Defendant has not met this *651 burden in the subject suit. The documents introduced by defendant at trial fail to disclose a slip clutch as recited in claim 6 of the '449 patent. Moreover, the weight of the evidence sustains a finding that the work of Camras was not accessible to the public.
The '449 patent in suit issued on June 12,1956. On June 28, 1956, plaintiff, as assignee of the '449 patent, filed a disclaimer disclaiming claim 10 of the '449 patent. Claim 10 is dependent upon claim 6, one of the '449 claims in suit. Defendant contends that plaintiff is estopped to charge infringement of claim 6 because of the disclaimer of claim 10. Defendant’s contention is without merit. The Patent Office allows an invention to be defined through varying the scope of claim coverage. Through this practice, structures defined by a claim which has been disclaimed may be covered by other claims not disclaimed. The construction of a patent, after a disclaimer has been properly entered, must be the same that it would have been if the matter so disclaimed had never been claimed. Dunbar v. Myers, 94 U.S. 187, 194 (1876).
Defendant has contended that the Government is entitled to an irrevocable, nonexclusive, nontransferable, royalty-free license to practice the inventions disclosed and claimed in the '495 and '595 patents in suit by virtue of a Government contract entered into by plaintiff and the Government. Briefly, said contract provided for the design and development of an airborne sound recorder-reproducer device. The contract initially called for both the arcuate principle and the linear principle approaches to recorder-reproducer devices. Prior to receiving the contract, plaintiff realized that a different approach to a recorder-reproducer would be required to meet the specifications under the contract. Plaintiff thereupon suggested to the contracting officer the use or a transverse type of recorder-reproducer which is the subject of the '495 and '595 patents. The details of the conception and reduction to practice of the devices disclosed and claimed in the '495 and '595 patents are set forth with more particularity in the accompanying findings of fact. The weight of the evidence shows that the devices defined in the '495 and '595 patents in suit were reduced to practice under the terms *652 of the Government contract, that such work was paid for by funds charged to said contract, and that defendant would be entitled to a royalty-free license to use the '495 and '595 patents, if said patents had been found valid.
In determining the issues of infringement, one must look to the claims of a patent. The patent claims define what is covered by the patent. See Smith v. Snow, 294 U.S. 1, 11 (1935). The range of equivalents which can be accorded an invention is dependent on the degree of the invention. This is to be determined by the state of the art. Where the art is crowded and the claims must be narrowly construed to be distinguished over the prior art, the range of equivalents is narrow. See Pratt & Whitney Company, Inc., et al. v. United States, 170 Ct. Cl. 829, 345 F. 2d 838, 145 U.S.P.Q. 429 (1965). The selected claims of the '449 patent in suit were narrowly defined to distinguish over the prior art cited by the Patent Office. Thus, the resilient means incorporated by reference into the '449 patent claims in suit must be accorded a narrow range of equivalents. The accused sound recorder-reproducer of American Measuring Instruments Corp. does not utilize a resilient means which falls within the range of equivalents accorded claims 6 and 18 of the '449 patent and therefore would not infringe said claims even if said claims were valid.
It is concluded that the selected claims in suit of the '449, '319, '642, '495, and '595 patents are invalid, but that the '413 patent claims in suit define a patentable invention which defendant has used without authorization of the owner.
Findings op Fact
1. This is a patent suit brought under the provisions of 28 U.S.C. § 1498 for the recovery of reasonable and entire compensation for the unauthorized use or manufacture by or for the United States of the inventions covered by the six patents in suit, as identified below, by the embodiment or incorporation thereof in various sound record-reproduce equipments and related devices. Plaintiffs petition was filed November 10, 1959, amended by petition filed June 15, 1960, and further amended by petition filed March 14,1963.
*653 2. Pursuant to 41 U.S.C. 114(b), 58 Stat. 663, the court, by notice of July 13, 1960, notified the Ampex Corporation to appear and to assert any claim it might have in the subject suit. Ampex filed an answer to plaintiff’s first amended petition on November 15,1960. The parties herein filed a stipulation on April 25, 1963, dismissing the subject suit as to Ampex. Upon consideration of the stipidation, the court ordered that the petition and all counterclaims of the third-party Ampex be dismissed with prejudice in a court order dated April 26,1963.
3. Plaintiff is a corporation organized and existing under the laws of the State of Connecticut and has a place of business in North Haven, Connecticut; and, as assignee, has been the record owner of the patents in suit continuously since their issuance.
4. The parties agreed at pretrial to a separation of issues for trial, that the issues of patent validity, infringement, and license be first determined upon full proofs and arguments of counsel, and that any accounting issue be deferred until resolution of the liability issue.
5. The United States Letters Patent in suit, listed in the order of their filing dates, are:
Filing date Issue date Patent claims in suit Patent No. Inventor(s)
11- 7-51 6-12-56 6,15,16,18. 2,750,449 Thompson, Punge, Lyon..
10- 2-52 3-11-58 1, 2. 2,826,642 Lyon, Thompson..
12-24-52 4-24-56 1, 2, 3, 8, 9, 11, 12. 2,743,319 Thompson, Punge, Lyon..
1-27-54 7-29-58 7, 8, 9. 2,845,495 Lyon_
7-23-54 8-20-57 1,2. 2,803,413 Lyon___
10-17-55 12- 1-59 1, 3, 4, 6, 6. 2,915,595 Lyon___
The patents in suit are hereinafter referred to as the '449, '642, '319, '495, '413, and '595 patents. The '449, '642, and '495 patents were asserted in the initial petition. The '413 and '595 patents were added by the first amended petition, while the '319 patent was added by the second amended petition.
6.Defendant has caused to be manufactured by or for the United States within the 6-year period next preceding the filing of the original petition herein, certain models or types of magnetic sound recording and reproducing equipments *654 and bulk tape demagnetizing equipments which are charged by plaintiff to infringe respectively the several patents here in suit, as specified in the following table:
MANUFACTURE AND TYPE NUMBER CLAIMS ALLEGED TO BE INFRINGED
SBM, MX-1373/UN Patent SBM[1] AMI [2] Olympics[3] Warwick[4] AMI, MX-1373B/UN No. RD-115B/ RD-115C/ RD-142/ RD-142A/ Olympic, MX-1724/ UN UN UN UN UN Warwick, MX-1724A/UN
'449 6,15,16,18 6, 18 6 6
'319 1-3,8,9, 1,2 11,12
'413 1,2
'642 1, 2
'495 7,8,9 7, 8,9
'695 1, 3-6 1,3-6
7. The art of magnetic tape recording during the period up to and including the patents in suit comprised three principal types of magnetic tape recorders; longitudinal recorders wherein a relatively narrow magnetic tape is moved longitudinally over a stationary recording head to thereby record a longitudinal track upon the tape, turntable or arcuate recorders employing a plurality of recording heads disposed upon a flat face of a turntable having its axis of rotation perpendicular to the path of movement of a magnetic recording tape such that as a relatively wide tape is moved across the face of the rotating turntable, a series of arcuate tracks is defined on the tape by the rotating recording heads, and drum or transverse recorders utilizing a plurality of recording heads disposed about the peripheral surface of a rotatable drum having its axis of rotation parallel to the movement of a relatively wide magnetic recording tape which, when passed along the drum, is curved to conform to the periphery of the drum to thereby cause a series of straight line tracks to be defined on the tape by the recording heads.
*655 THE '449 PATENT
8. The '449 patent relates to a long-playing magnetic tape recorder of the type wherein sound is recorded transversely on a relatively wide magnetic tape. Figs. 1 and 2 of the

patent drawings are reproduced herein. The '449 construction includes a feed reel 12 and a take-up reel 13 disposed on opposite sides of a transducer head turntable assembly 15 having a plurality of radially spaced transducer heads 37 contained therein. A pressure plate and gate mechanism 14 having a gate roller 171, a resilient pad 176, a guide bar 174, a feed pressure roller 161, and a synchronization cam 172 is slidably mounted above the turntable assembly 15 and adapted to be moved vertically by a crank lever 128.

*656

When in its downward position, the gate mechanism 14 resiliency urges the tape T downwardly against the transducer heads 37 to insure tape contact with the heads while pressure roller 161 bears against a drive roller 102 thereby insuring a positive frictional drive of tape T as it passes over the drive roller. The turntable 15, drive roller 102, and take-up reel 13 are driven from a single motor 18 through a gear reduction unit such that the turntable assembly 15 rotates at a constant speed in timed relation with respect to the translation of the tape. A friction slip clutch and pulley mechanism 85 is provided on take-up reel spindle 75 to compensate for the increasing diameter of tape as it is wound on the take-up reel and insures a relatively constant tension in the tape. The synchronization cam 172 has a thumb wheel 173 fixed thereto which allows manual rotation of the cam to adjust the length of tape between the contacting reproduce heads 37 and the drive roller 102 whereby synchronization of the recorder with a recorded tape may be readily accomplished.
9. Plaintiff has relied on claims 6,15,16, and 18 of the '449 patent. Claims 6 and 15 are dependent claims which refer *657 to and incorporate by reference the elements of claim 1. Claim 16 is dependent upon claim 15 while claim 18 is dependent upon claim 2. Claims 1 and 2 read as follows:
PATENT CLAIM 1 OP '449
1. In a long playing magnetic tape recording and reproducing apparatus employing drive means for longitudinally advancing a relatively wide magnetic tape through the apparatus, a turntable having a plurality of electromagnetic transducer heads radially spaced apart located below the path of said tape, means responsive to said drive means for rotating said turntable in timed relation with respect to the speed of said tape, and resilient means above said tape to press it down into contact with said heads so as to trace a series of transverse parallel arcuate recorded tracks on said tape.
PATENT CLAIM 2 OE '449
2. The invention as defined in claim 1, wherein said heads are symmetrically spaced around the axis of rotation of said turntable, and are all located at the said distance from said axis.
Claim 6 incorporates claim 1 and further recites a tape feed reel, a tape take-up reel connected to the drive means, and a friction slip clutch in the take-up reel to compensate for the increasing diameter of the tape wound on the take-up reel. Claim 15 is dependent upon claim 1 and further defines the resilient means as being supported by a depressible plate, and provides in front of and behind the resilient means a pair of idler rollers mounted in the plate for pressing on the tape. Claim 16 incorporates the device of claim 15 and provides that the forward idler roller is eccentrically mounted in the plate thereby allowing the length of tape between the recording point and the drive roller to be varied to adjust the synchro-nism of the recorded tracks with the transducer heads. Claim 18 recites the device as defined in claim 2 in which the symmetrically spaced heads are arranged in two alternated sets whereby at least two magnetic tracks may be simultaneously traced on the tape.
*658 10. Claim 1 of the '449 patent was disclaimed by a disclaimer filed in the U.S. Patent Office on June 28,1956, by the assignee of the '449 patent, the plaintiff herein.
11. In arguing for allowance of the '449 patent application in the Patent Office, the applicants emphasized the lack of a teaching in the prior patents cited by the Patent Office of a turntable having a plurality of spaced magnetic transducer heads for producing interrupted transverse parallel arcuate tracks on a wide magnetic tape. Prior patents cited by the Patent Office included Marzocchi 2,245,286, Begun 2,538,893, and Hickman 2,648,589. More specifically, applicants argued that Marzocchi '286 failed to disclose means responsive to the drive means for rotating a turntable in timed relation with respect to the speed of the tape, and resilient means above the tape to press it down into contact with the transducer heads and therefore was not a good basic reference. Applicants distinguished Begun '893 as relating merely to a high-speed tape having no turntable for producing a series of interrupted transverse tracks as in applicants’ invention. Hickman '589 was distinguished as relating to a magnetic recorder in which the tape is normally stationary and failing to disclose the eccentrically mounted synchronizing idler roller recited in claim 16 of the '449 patent or a depressible plate for supporting the resilient means for engaging the tape resiliently.
12. Defendant has urged that the '449 patent claims in suit are invalid on the grounds that the invention covered by the claims was patented or described in a printed publication and therefore invalid under 35 U.S.C. § 102, and that the invention was obvious to those skilled in the art at the time it was made, and is hence invalid under 35 U.S.C. § 103. Defendant further alleges that the invention claimed in the '449 patent had been known to or used by one Marvin Camras in this country prior to the alleged invention thereof by the patent-ees and is invalid under 35 U.S.C. § 102(a).
13. Of the many patents and publications cited by the defendant against the '449 patent in its answer to plaintiff’s second amended petition, defendant has relied upon the following:
*659 TOUTED STATES PATENTS
Date Patentee
2,026,872 1936 De Forest..
2.127.331 1938 Fulton_
2,188,660 1940 Clark_
2.326.332 1943 Clausen_
2,635,486 1950 Dank_
2,603,721 1962 (Filed 1947) Camras — .
2,604,650 1952 (Filed 1947) Begun_
2,620,404 1952 (Filed 1949) Pond_
2,632,061 1953 (Filed Begun_
2,707,212 1955 (Filed 1950) Hickey_
POEEIGN PATENTS
British Marzocehi.
British Diamand..
PUBLICATION
Begun, Magnetic Recording, Rinehart & Company, Inc., New York, 1949, pp. 106-107,118-119.
None of the above-listed patents or publications was cited by the Patent Office during the prosecution of the '449 patent application.
14. British Marzocehi 497,800 corresponds generally to U.S. Marzocehi 2,245,286, cited against the '449 patent application by the Patent Office. British '800 and U.S. '286 do not differ substantially in any respect material to their application against the '449 patent claims in suit. They both teach magnetic recording using the principle of transverse arcuate tracks on a wide tape. Both disclose a turntable having recording heads therein which rotates in timed relation with respect to the movement of the tape. Both of the Marzocehi patents disclose a means to synchronize the tape tracks with the reproduce heads for playback but such means is not an eccentric roller as disclosed in the '449 device. Neither Marzocehi patent disclosure teaches the use of a resilient means located above the tape to insure contact between the tape and recording heads, a depressible plate for holding the resilient means, or a friction clutch on the take-up reel to allow for increasing diameter of the tape thereon. While both the '800 and '286 patents provide a tape take-up reel connected to the tape drive means, the '800 patent specification does not specify what the connection comprises.
*660 15. Of the prior patents cited by defendant to show the use of resilient means to press a tape down into contact with record-reproduce heads, Camras '721 is the most pertinent and discloses two forms of resilient means to insure good magnetic contact between the tape and heads. The '721 patent discloses the use of a felt pad secured to a leaf spring with the springiness of the fibers being utilized to cause the tape to follow possible irregularities in the poles of the record-reproduce head, and alternatively shows a plurality of fingers contained within a block, each finger being spring-biased to its outward position. The outer finger ends define a face which engages the tape to press it against the record-reproduce head. The weight of the evidence received at trial discloses that the purpose of good tape to head contact is substantially the same for both longitudinal and transverse track type magnetic recorders, i.e., to insure good magnetic contact between the tape and record-reproduce heads.
16. Defendant has relied upon a number of prior patents as teaching the use of a friction slip clutch on a take-up reel in magnetic recorders to compensate for the increasing diameter of tape as it is wound upon the take-up reel. Of the patents cited, Clausen '332 and Pond '404 are the most pertinent. The Clausen '332 specification describes electromagnetic recording and discloses a slip clutch for a transverse track tape recorder. The Begun publication states that a slipping clutch may be used in a magnetic recording system to maintain a constant tension in the recording medium. Defendant has relied upon De Forest '872 for its depressible support and upon Dank '486, Camras '721, Begun '550, and Begun '061 as disclosing the use of resilient pressure pads secured to supports which may be depressed to provide contact between the pressure pad and tape, insuring good magnetic contact between the tape and record-reproduce heads. Dank '486 and Camras '721 state that the reason for the resilient means mounted on a movable support is to allow ready loading and removal of the tape, the same purpose for which the depres-sible plate of the '449 patent is provided. Defendant has relied upon Hickey '212 for disclosing the combination of idler rollers disposed on opposite sides of a pressure pad to assist in positioning the tape and a resilient pressure pad to insure *661 good magnetic tape-to-bead contact. British '584 also shows the use of idler rollers disposed on opposite sides of the point of contact between the tape and record-reproduce heads. In view of the well-known use of movable support means for causing engagement between resilient pressure pads and magnetic tape in the magnetic recording art and the similarly well-recognized use of paired idler rollers to assist in positioning and bearing against the tape, it was a matter of ordinary mechanical design to incorporate such elements in a depressible plate as illustrated in the '449 patent. Providing means to remove tape contacting elements from the area of tape to record-reproduce head contact to facilitate loading or removal of the tape from the recording device was also an obvious design expedient.
17. Defendant has urged that the synchronization feature of claim 16 of the '449 patent was old and that claim 16 does not define patentable invention over claim 15 upon which it is dependent. The idea of synchronizing the transversely recorded tracks on a magnetic tape with the reproduce heads during playback was old as taught by the Marzocchi '286 patent, a reference of record against the '449 patent application. The method of synchronization wherein the length of tape between the point of tape-to-head contact and the capstan drive roller is varied, was old as taught by British patent '584. The '449 patent device incorporated the tape adjusting idea of British '584 into one of the end idler rollers through mounting the roller eccentrically to its support axis.
18. Defendant has urged Fulton '331 and Clark '650 as teaching the concept of alternated sets of recording heads to simultaneously trace a plurality of magnetic tracks upon a recording tape medium as recited in claim 18 of the '449 patent. The '331 and '650 patents each disclose the broad idea of multichannel recording.
19. The addition to the electromagnetic recording mechanism disclosed in Marzocchi '286 of a friction slip clutch in the take-up reel drive to compensate for the increasing diameter of tape wound on the reel would have been obvious to one having ordinary skill in the recorder art in view of Clausen '332 which disclosed a driven friction roller (40) engaging the flanges of the take-up reel (29). Claim 6 of *662 the '449 patent in suit is invalid over Marzocchi '286 in view of Clausen '332. Tbe addition to Marzocchi '286 of resilient means and idler rollers to press the tape into contact with the heads would have been obvious in view of the spring-mounted pad (115) and idler rollers (111 and 113) disclosed by Hickey '212. Claim 15 of the '449 patent is invalid over Marzocchi '286 in view of Hickey '212. The addition to Mar-zocchi '286 of an eccentrically mounted idler roller to adjust the length of tape for synchronism would have been obvious in view of the idler pulley (14) clearly taught by Diamond '584. Claim 16 of the '449 patent is invalid over Marzocchi '286 in view of Diamand '584. The addition to Marzocchi '286 of symmetrically spaced heads arranged in two sets to trace at least two tracks on a tape would have been obvious in view of the four spaced recorders disclosed in fig. 5 of Fulton '331 for simultaneous use. Claim 18 of the '449 patent in suit is invalid over Marzocchi '286 in view of Fulton '331. Claims 6, 15,16, and 18 of the '449 patent in suit are invalid under the provisions of 28 U.S.C. § 103.
20. Defendant has urged that claim 6 of the '449 patent is invalid under 35 U.S.C. § 102(a) because the invention recited therein was known and used by one Marvin Camras prior to the invention thereof by the patentee. In support of this allegation, defendant has relied upon the deposition of Marvin Camras taken in conjunction with a civil action for patent infringement by the plaintiff herein, The Sound-Scriber Corporation, against Ampex Corporation and NTA Television Broadcasting Co., defendants, brought in the United States District Court for the District of New Jersey as Civil Action No. 506-60. The Camras deposition, defendant’s exhibit 47-1, was taken on November 2 and 3,1961, and referred to certain sketches, laboratory notes, a model, and U.S. Patent 2,900,444, filed January 12, 1953, granted to Camras, along with the Camras patent application file. The disclosure of the Camras patent 2,900,444 is not available as a state of the art or anticipatory reference against the '449 patent in suit because it was filed January 12, 1953, subsequent to the filing of the '449 patent application. Camras stated in his deposition that the structure disclosed in his '444 patent, namely, the capstan drive means, was *663 different from that shown in his sketch dated January 26, 1950, defendant’s exhibit 47-79. The Camras sketch is not clear as to the structure used to drive the capstan roller. Although Camras stated that the capstan belt drive was driven from the rubber-rimmed drive roller, the sketch does not disclose structure for doing this. Camras further stated in his deposition on cross-examination that neither of the devices disclosed in his sketch dated January 26, 1950, and his '444 patent showed a slip clutch in the take-up reel to compensate for the increasing diameter of the tape. The Camras model, defendant’s exhibit 47-85 herein, alleged by defendant to be a prior reduction to practice and use of the construction claimed in the '449 patent, included a turntable and drive means therefor, but the tape guide and tape drive were not present in the model nor was a pressure pad included. Camras did not testify in the subject suit nor was the testimony in his civil suit deposition of November 2 and 3, 1961, corroborated by any other witness. It is found that the device disclosed in Camras’ sketch dated January 26, 1950, does not sufficiently disclose the device recited in claim 6 of the '449 patent nor does the evidence presented at trial show that the Camras sketch of January 26, 1950, or that the device allegedly constructed therefrom, was accessible to the public. The evidence does not establish prior knowledge and use under 35 TJ.S.C. § 102(a).
THE '319 PATENT
21. The '319 patent is directed to improvements in the construction set forth in the '449 patent and relates specifically to mechanisms to facilitate scanning and loading magnetic tape in a recorder. The '319 patent discloses a scan lever to raise a pressure roller from a tape drive roller to permit rapid scanning of the tape and discloses linkage including a load lever to raise a pressure assembly from the recording head for tape loading and rapid rewind. An interconnecting linkage between the scan lever and load lever permits the scan lever to be actuated independently of the load lever but prevents the load lever from being actuated without simultaneously actuating the scan lever.
*664 22. The magnetic tape recorder disclosed in the '319 patent, figs. 1 and 2 of which are reproduced herein, includes a tape feed reel 19 and a take-up reel 20 disposed on opposite sides of a rotatable recording head 14. A wide magnetic tape 35 passes 'between the upper face of the recording head 14 and the lower face of a pressure assembly 18. A motor drives the recording head 14 and tape drive roller 25 through a gear box assembly 15. A mechanical linkage arrangement connecting a scan lever 64 to a pressure roller 26 may be actuated to lift the roller 26 from its normally biased position against drive roller 25 to interrupt tape drive. An idler pulley operated by the scan lever linkage engages a belt which drives the take-up reel 20. When the tension is relieved from the drive belt and the pressure roller 26 is raised from the drive roller 25, reel 19 or 20 may be manually cranked by hand cranks 27 and 28 to rapidly pass the tape 35 between the raised pressure assembly 18 and recording head 14 for scanning. A second linkage arrangement between a load lever 73 and crank lever 22a, may be actuated by the lever 73 to lift tape tension shoe 22 and also the pressure gate assembly 18 from the recording positions shown in fig. 1 to the raised position shown in fig. 2. Load lever 73 is provided with a lip 74 which underlies scan lever 64 such that clockwise movement of the load lever 73 in a direction to lift shoe

*665

22 and pressure assembly 18 causes simultaneous movement of scan lever 64 to raise pressure roller 26 from drive roller 25 and relieve the tension in the drive belt thus permitting easy loading or unloading of the tape.
23. Plaintiff has asserted that claims 1,2,8, 8,9,11, and 12 of the '319 patent have been infringed by the procurement and unauthorized use by defendant of certain magnetic recorders as set forth in finding 6. Claims 1 and 8 of the '319 patent claims in suit are independent claims while claims 2, 3, 9,11, and 12 are dependent claims. Claims 1 and 8 are as follows:
PATENT CLAIM 1 OP '319
1. In a scanning mechanism for a long-playing magnetic tape recorder of the type comprising a drive roEer for advancing a magnetic tape longitudinally, and having a rotating interrupted track magnetic recording head mounted on a vertical axis adjacent the path of the advancing tape, a gate for pressing said tape against said recording head, a pressure roller for pressing said tape against said drive roller to cause said tape to advance at its normal slow speed during recording or playback, and a manually operated scan lever having linkage means to lift said pressure roller free from said drive roller to permit said tape to be manually moved rapidly between said pressure gate and said magnetic head for scanning.
*666 PATENT CLAIM 8 OP '319
8. In a long-playing magnetic tape recorder, provided with a rotating turntable member having a plurality of recording heads arcuately disposed thereon adapted to contact with said tape while said turntable member rotates at slow speed during recording and reproduction, a feed reel, and a take-up reel for said tape, a hand crank connected to said take-up reel, said feed and take-up reels being rotatably disposed at opposite sides of said turntable and at right angles thereto for guiding said tape flatwise across said turntable, a motor for driving said turntable, a pulley, a belt connected to said pulley and to said motor for driving said take-up reel therefrom, said belt being held in taut driving condition upon said pulley by an idler roll, and manually-operated linkage means to release said idler roll from said belt whenever it is desired to manually turn said hand crank so as to scan said tape more rapidly than in normal reproduction.
Claim 2 recites a device as set forth in claim 1 and further recites a manually operated load lever having linkage means to lift the pressure gate from the recording head to permit more rapid movement of the tape for loading and rewinding. Claim 3 recites a device as set forth in claim 2 in which the load lever is provided with a side lip which extends under the scan lever such that manual movement of the load lever in a direction to release the pressure gate from the recording head simultaneously releases the pressure roller from the driving roller. Claim 9 is dependent upon claim 8 and recites a manually actuated scan lever connected to the idler roll release linkage. Claim 11 recites a device as defined in claim 9 and further recites a manually operated load lever having a side lip to engage the scan lever and cause simultaneous actuation of the scan and load levers. Claim 12 is dependent upon claim 8 and calls for a cooperating pressure roller and a drive feed roller located on opposite sides of the tape with an idler roll operating linkage connected with arm upon which the pressure roller is mounted.
24. In prosecuting the '319 patent application before the Patent Office, the assignee of the patent application, in the remarks accompanying an amendment to the application, *667 stated the invention concerns improvements disclosed and claimed in the application as follows:
* * * the improvements comprising the invention relate to scanning control mechanisms for conveniently and easily allowing manual scanning of the wide tape to quickly select recorded portions, and intermittently slowing down the recorder to normal speed to listen until the exact recorded portions along the tape are found. Associated with the mechanism for such rapid manual scanning are a “scan level”, and a “load lever”, cooperating with the “scan lever” which performs the functions of the “scan lever” and at the same time is operative to lift the pressure gate so that the recorder is quickly readied for loading and unloading of the wide tape and associated reels.
25. Defendant has urged that the '319 patent claims in suit are invalid under 35 U.S.C. § 102 on the grounds that the invention claimed was fully anticipated by the prior art, and that the invention was obvious to those skilled in the art at the time it was made and therefore invalid under 35 U.S.C. § 103. In support of its defense of invalidity of the '319 patent claims in suit, defendant has cited the following prior patents and publications:
UNITED STATES PATENTS
Patentee Date
Anderson_ 1,422, 1922
De Forest_ 2,026, 1936
Marzocchi_ 2,245, 1941
Clausen_ 2,326, 1943
Dank_ 2,535, 1950
Kuhlow_ 2, 595, 1952 (filed Apr., 1951)
Begun... 2,604, 1952 (filed Jan., 1947)
Howell, et al-. 2,639, 1953 (filed May, 1947)
Hickman_ 2,648, 1953 (filed July, 1949)
Demby, et al.. 2,703, 1955 (filed Oct., 1950)
FOREIGN PATENTS
Great Britain, Marzocchi. 497,800 1938
Great Britain, Diamand.. 654,584 June, 1951
PUBLICATIONS
Begun, Magnetic Recording, Rinehart & Company, Inc., New York, 1949
26. Of the above prior patents, the Kuhlow '197 and Howell '333 patents were cited by the Patent Office during *668 the prosecution of the '319 patent application. Defendant has specifically relied upon the U.S. patents to Anderson, Clausen, Dank, Begun, and Demby, the two British patents, and the Begun publication. The applicants, in their remarks responding to the Patent Office, distinguished the '319 invention over the patents cited by the Patent Examiner as follows:
The patents to Howell and Kuhlow cited, relate to magnetic recorders wherein the recording head or transducer is stationary and records on a straight line along the tape as it travels across the transducer. Mechanism is shown for moving pressure members or pads against and away from a drive member or capstan for loading or unloading the tape. No special attention is given in these machines to the problem of speedy scanning, since it can be done simply by increasing the speed of the drive motor. In applicants’ mechanism however, it will be noted that the speed of the transducer heads is very much greater than the speed of the tape across the turntable. To speed up applicants’ whole mechanism so that a roll of wide tape could be scanned in a few minutes would require the turntable to rotate at a prohibitive speed. Applicant has solved this problem by the provision of ■unique mechanism allowing the tape to be drawn over the turntable rotating at its normal speed, thereby sampling portions only of each individual lateral arcuate track.
27. The evidence discloses that, as early as 1947, longitudinal magnetic tape recorders were commercially available which utilized the principle of scanning wherein a pressure roller is disengaged from a capstan or drive roller by actuation of a scan lever allowing the recording tape to be advanced over a reproduce head more rapidly than the normal reproduce speed. One such tape recorder, called a Magnecorder, was procured by the Navy Underwater Sound Laboratory in 1949 and provided for an adjustable scanning speed. Loading of the Magnecorder requires the step of manually lifting a spring loaded pressure gate to insert the tape.
28. Defendant has urged that claims 1, 2, and 3 of the '319 patent are invalid in view of Begun '550 and Dank '486 and further, the claims 1 and 2 of the '319 patent are unpatentable over Diamand '584. Begun '550, defendant’s exhibit 30, dis *669 closes in fig. 6 a magnetic recorder baying a feed reel, magnetic tape, a record-reprodnce bead, a drive roller and a take-up reel. Tbe Begun recorder includes a roller (110) adjacent tbe drive roller and a pressure pad or roller (112) adjacent tbe record-reproduce bead, both supported on levers linked with a control (130) which may be operated to simultaneously lift both tbe roller and tbe pad from tbe tape. Such operation permits the tape to be quickly moved forward or backward to a desired portion of tbe recording, and also permits rapid loading or unloading of tbe tape. Tbe Begun recorder does not include a rotating bead for producing an mterrupted sound track transverse of tbe tape. Dank '486, defendant’s exhibit 28, discloses magnetic recording apparatus having recording tape pressure pads (81), opposite the recording beads (36), a movable guide pin (247) to hold tbe tape away from the beads, a tape-drive roller (287), and guide pins (240) to disengage the tape from the drive roller. Tbe pressure pads and guide pins are carried by interconnected levers operative to disengage the tape from the recording heads and tape drive during fast forward and fast rewind of tbe tape. Diamand '584, defendant’s exhibit 44, discloses a magnetic tape-recordmg apparatus having a wide tape and a turntable carrying four record-reproduce heads making curved tracks across tbe tape. The tape passes from a supply reel (2) over an idling pulley (5), over recording beads (7) on a rotating disc, over a tape-drive wheel (4), and thence over an idling pulley (16) to a take-up reel (3). The second idling pulley (16) is carried by a pivoted lever (17) operable to raise tbe tape away from the drive wheel (4) to allow tbe tape to be run at increased speed required for a quick-bunting operation. An adjustable idling pulley (14) is disclosed between the recording position and tbe tape-drive wheel to alter tbe phase of tbe part of the tape being explored by tbe reproduce beads. Betractable pressure pads to press tbe tape against the recording beads are not disclosed in Diamand '584.
29. The use of levers and linkages mechanically interconnected to cause tbe operation of a single lever or pushbutton to move pressure pads and idler rollers was disclosed by *670 Begun '550 and Dank '486, and tbe arrangement thereof is a matter of mere engineering skill or engineering design. The subject matter as a whole of claims 1, 2, and 3 of the '319 patent would have been obvious at the time the '319 application was filed to a person having ordinary skill in the tape-recording art. Claims 1, 2, and 3 of the '319 patent in suit are invalid in view of the teachings of Begun '550 or Dank '486 and Diamand '584.
30. Defendant has urged that claims 8 and 9 of the '319 patent do not define patentable invention over Diamand '584 in view of Anderson '809 and that claims 11 and 12 of the '319 patent do not patentably define over claims 8 and 9. Aoiderson '809, defendant’s exhibit 14, discloses a power control for a drive mechanism comprising a drive pulley, a driven pulley, a slack belt extending between the pulleys, and a means to tighten the belt so as to transmit power from the drive pulley to the driven pulley. The belt-tightening means includes a roller rotatably mounted on a pair of spaced lever arms which are adapted to move the roller into and out of belt engagement through actuation of a control lever. Mar-zocchi '800 and Clausen '332 disclose magnetic recorders of the type utilizing a relatively wide tape and a plurality of record-reproduce heads radially disposed upon a rotating turntable such that as the tape is moved along its longitudinal axis, the heads describe a series of arcuate paths across the tape as they record or reproduce from the tape. Marzocchi '800 disclosed a sprocket drive to engage edge perforations in the tape while Clausen '332 disclosed a sprocket drive means for the tape but stated that the tape may be driven in other ways so as not to require tape perforations. Neither of the patents suggests tape scanning nor provides lever and linkage means to retract pressure gates or drive capstan pressure rollers from contact with the tape as disclosed in the '319 patent in suit. Clausen '332 discloses the use of a belt connection between a motor drive pulley and a driven pulley to effect rotation of a take-up reel.
31. Summarizing, it is found that the subject matter as a whole defined in claims 1, 2, 3, 8, 9, 11, and 12 of the '319 patent in suit defines combinations of mechanisms which were each well known prior to the '319 application for patent. *671 The combinations claimed did not produce any new or unexpected results and would have been obvious to one having ordinary skill in the recorder art. The several '319 patent claims in suit are found to be invalid under 35 U.S.C. § 103.
THE '495 AND '59 5 PATENTS
32. The Lyon '495 patent states that it relates to an improvement over the apparatus disclosed in Thompson, et al., '449, discussed above. The Lyon '595 patent states that it relates to an improvement over the construction disclosed in Lyon '495. Both the '495 and '595 patents relate to long-playing wide tape magnetic recorders of the type which includes tape guide and drive means and a plurality of transducers radially spaced about the peripheral surface of a drum adapted to rotate about a longitudinal axis in parallel relation to the direction of tape travel whereby a series of parallel transverse tracks is produced upon the tape substantially at right angles to the direction of travel of the tape. The '595 patent is specifically directed to a plurality of such drums mounted in parallel to record a plurality of sources of intelligence simultaneously.
33. The '495 patent, figs. 1, 3, 5, and 6 of which are reproduced herein, is directed to a drum-type magnetic tape recorder including a feed reel 11 and a take-up reel 12 disposed on opposite sides of a head drum assembly 37. The drum has a plurality of transducer heads 46 with cores 47 protruding from its peripheral surface. A drive roller 20 and pressure roller 21 provide drive means for the tape T as it passes from tape guide drum 17 over the head assembly 37. A tape holding shoe 24 having a concave bottom recess 29 presses the tape T against the head drum to insure contact between the tape and transducer heads 46. A flywheel 31 driven by wheel 36 from the inner rim 38 of head drum 37 at a high speed relative to the head drum provides a filtering action against driving gear disturbances. A synchronizing means, including gears 67, 68, and 69 mounted on plate 74 which is pivoted on shaft 20a may be actuated by knob 76 to longitudinally adjust the position of the tape T with respect to the heads 46 for proper playback. A motor and *673 speed reduction gear train provide power to rotate both the head drum 37 and tape drive roller 20 providing a constant ratio of drum speed to tape speed.

*672

*673 34. Plaintiff relies on claims 7, 8, and 9 of the '495 patent. Claim 7 is set forth below in tabular form with emphasis added to facilitate understanding the combination of structural elements defined.
CLAIM 7 OF '495
In an apparatus for recording upon and reproducing intelligence from a wide flexible magnetic tape, the combination comprising,
(a) a tape feed reel supporting a roll of magnetic tape,
(b) a tape tahe-up reel,
(c) drive mechanism, for passing said tape from said tape feed reel to said take-up reel,
(d) a longitudinal shaft having its axis of rotation located parallel to the directional path of said tape passage,
(e) a cylindrical drum mounted on said shaft and having a plurality of transducer heads equidistantly spaced about and protruding from the peripheral wall of said cylindrical drum,
_(f) said drive mechanism including means to rotate said cylindrical drum in timed relation with respect to the passage of said tape,
(g) said cylindrical drum being so located with respect to said tape that said transducer heads will successively contact said tape to produce parallel transverse traehs thereon substantially at right angles to the direction of movement of said tape,
(h) arcuate holding means to resiliently press said tape against the periphery of said cylindrical drum for maintaining said tape in intimate contact with said protruding transducer heads, and
(i) flywheel means connected with said shaft for filtering out wow, flutter, and other mechanical disturbances in the driving mechanism.
35. Claim 8 of '495 is similar to claim 7 and recites a mounting chassis having the feed reel and the take-up reel on opposite ends thereof, recites that the drum shaft be driven at constant speed, and recites means for longitudinally adjusting the tape with respect to the heads during reproduction *674 to synchronize said beads with the tracks recorded on the tape. Claim omits recital of means to rotate the drum in timed relation with respect to tape speed. Claim 9 of '495 is similar to claim 8 and adds recital of the means to rotate in timed relation.
36. Claims filed in the '495 application for patent were rejected by the Patent Office as drawn to an old and exhausted combination of a magnetic recorder, and the Patent Office cited:
Marzocchi_ 2,245,286 1941
Hickman_ 2, 648, 589 1953
Begun, Magnetic Recording, page 119-1949
In seeking the allowance of claims, applicant argued that certain claims were amended to include the flywheel mechanism “by means of which, being combined with the drive mechanism for the drum and tape, the extremely smooth motions of the tape and drum required for faithful recording and transcription are achieved in apparatus having closely spaced parallel sound tracks.” Before allowance by the Patent Office claims which became claims 7 and 8 of the '495 patent were rewritten to recite “flywheel means” as one of the elements of the combination.
THE '595 PATENT
37. The '595 patent in suit discloses a magnetic tape recorder substantially the same as that taught by the '495 patent except that the '595 apparatus includes a pair of drums, each drum carrying a set of spaced recording heads to simultaneously record or reproduce intelligence from two sources. The '595 patent also discloses a slightly different mechanism to synchronize the tape and heads for playback. Plaintiff has asserted that claims 1, 3, 4, 5, and 6 of the '595 patent have been infringed by defendant. Claim 1 of the '595 patent is set forth below in tabular form with emphasis added to facilitate understanding the combination claimed.
claim 1 OP '595
In an apparatus for recording intelligence upon and reproducing it from a longitudinally moving wide flexi *675 ble magnetically coated tape passing continuously from a feed reel to a take-up reel,
ia) a chassis upon which said reels are mounted,
(b) a continuously rotating longitudinal shaft mounted on said chassis,
(c) a pair of cylindrical drums rigidly mounted on said shaft for rotation therewith,
'(d) each drum carrying a set of spaced transducer heads, and
(e) means simultaneously to magnetically record upon, and reproduce from said tape a pair of alternating transverse tracks from two separate sources of intelligence.
38. Claim 3 of the '595 patent adds to claim 1 means to adjust the tape longitudinally with respect to the transducer heads for proper playback. Claim 4 is like claim 1 and adds a positive recital of the tape reels, the tape drive, and that the transducer heads are equidistantly spaced and protrude through the peripheral walls of the drums. Claim 5 likewise defines apparatus for tape recording intelligence from two sources by transducers movable transversely with respect to the tape to produce spaced sound tracks. Claim 6 adds to claim 5 that the transducers are rotatable about a common axis and includes recital of common drive means for the tape and the transducers.
39. The '595 application for patent was rejected by the Patent Office which cited the following prior patents:
Marzocchi_ 2,245,286 1941
Schuller_ 2,352,023 1944
Hickman_ 2, 648,589 1953
Somers- 2,762,861 Filed Aug. 30,1954
Masterson- 2,773,120 Filed Nov. 30,1950
In securing allowance of the '595 patent claims in suit, the applicant told the Patent Office that his invention comprised a recording device operative to record and reproduce two individual signals or sources of intelligence simultaneously on a moving wide band tape wherein the signal tracks are impressed transversely across the tape in interspaced relation.
40.Defendant noted numerous prior patents and publications in its answer alleging invalidity of the '495 and '595 *676 patent claims in suit as failing to patentably define over the prior art. Of those cited, defendant has relied upon the following:
Date Patentee
2,127,331 1938 Fulton_
2,188,650 1940 Clark_
2,750,449 1956 (filed 1951) Thompson et al—
2,773,120 1956 (filed 1950) Masterson.
2,813,924 1957 (filed 1951) Coutant et al_
2,900,444 1959 (filed 1953) Camras_
3,020,356 1962 (filed 1952) Barry...
497,800 1938 British, Marzocchi.
PUBLICATIONS
Begun, Magnetic Recording, Rinehart & Company, Inc., New York, 1949, pp. 118-119 Barreau, Magnetic Recording of Long Duration, L’Onde Electrique, March 1954.
41. Camras '444, application filed more than 1 year prior to the '495 application, discloses attaching flywheel means to a capstan drive roller in a tape recorder device to dampen speed fluctuations and flutter frequencies, the same purpose for which the flywheel in the '495 device is provided. Barry '356 discloses a transverse type magnetic tape recorder including a head drum having a plurality of transducers equidistantly spaced about its peripheral surface and adapted to transversely contact a continuously moving wide tape as the drum rotates on a longitudinal shaft having its axis in parallel relation to the direction of movement of the tape. The '356 drum is rotated in timed relation to the tape speed through an electric motor and gear train assembly. The tape is held in resilient contact with the transducers through a spring-loaded tape guide. Coutant '924, as urged by defendant against the '495 patent, is cumulative to the purposes for which defendant cited Barry '356. Neither '356 nor '924 discloses a flywheel means as used in the '495 device.
42. It is found that adapting a flywheel, such as disclosed in Camras '444, to a transducer carrying drum in a transverse type recorder for the same purposes for which flywheels have long been recognized in the mechanical arts was an obvious mechanical expedient resulting in no new or unexpected result. Claims 7, 8, and 9 of the '495 patent in suit *677 are invalid in view of prior art such, as Barry '356 or Coutant '924 and Camras '444.
43. With, respect to the dual channel recording disclosed in the '595 patent, defendant has specifically urged Thompson '449, Coutant '924, Clark '650 and the Barreau publication. None of these was cited by the Patent Office examiner. Thompson '449, described above in finding 22, discloses a long-playing magnetic tape recorder “provided with eight transducer heads for simultaneously recording two sound channels on a single tape.” Coutant '924 discloses in fig. 7 four cylindrical drums mounted on a shaft, each drum carrying a set of spaced transducer heads and each adapted to deal with a definite portion of the picture image being recorded or reproduced. Clark '650 discloses magnetic recording and reproducing systems using wide tape and states that more than a single spiral on one drum “will provide multichannel recording as scanning lines can be interspaced on the sheet.” The Barreau publication discloses recording in diagonal tracks on magnetic tape and suggests that the number of recording heads is not fixed and that it is possible to record two or three tracks simultaneously. Fulton '331 discloses facsimile transmitting and receiving apparatus which operates electrolytically rather than magnetically. A wide tape is used and a rotating ring produces transverse tracks. The Fulton patent specification states that the carrier ring may carry a group of translating elements so that on each passage over the sheet a plurality of lines is simultaneously scanned or recorded.
44. It is found that adapting the Lyon '495 recording apparatus to provide alternate transverse tracks from two separate sources of intelligence by adding a second cylindrical drum would have been obvious to one having ordinary skill in the recording art and that such did not produce a new or unexpected result. Claims 1, 3, 4, 5, and 6 of the '595 patent in suit are invalid over prior art such as Thompson '449 or Coutant '924.
THE '413 PATENT
45.The '413 patent, figs. 1 and 3 of which are reproduced herein, relates to a tape reel clamp and handle construction *678 wherein a handle for rotating the tape reel is detachably locked to a drive shaft by a captive clamping nnt. Referring to figs. 1 and 3, the handle 28 which carries knob 29 has a captive clamping nut 27 internally threaded at 32 to engage a threaded drive shaft 17. The tape reel 13 is mounted on a metal drum 25 carried by the drive shaft 17 and abutting a stop nut 24. In clamping the handle 28 to the reel 13 and the reel to the metal drum 25, the captive nut 27 is turned onto shaft 17 and causes outstanding keys 28b on the inwardly directed hub 28a of handle 28 to engage keyways 14 in the hollow end of the reel 13. At the same time, an outstanding key 26 on drum 25 engages a keyway 15 on the opposite end of reel 13 thereby serving to simultaneously secure the reel and drum to the shaft 17 and to hold the handle 28 on the reel.

46. Plaintiff has relied upon both claims of the '413 patent in suit. These two claims are set forth below in tabular form to facilitate understanding.
CLAIM x OF '413
A tape reel having a cylindrical hollow hub and a pair of reel flanges,
said hub being provided with a plurality of parallel narrow longitudinal interior keyways in both ends thereof,
a drive shaft,
*679 an. interior drum mounted on said drive shaft and having a key for selectively engaging in any one of said keyways,
a crank arm having a circular aperture and an inwardly extending hub provided with a plurality of outstanding keys selectively fitting within a like number of said keyways, and
a captive nut located within said aperture and thread-edly secured to said shaft for permitting the removal of said crank arm and said reel whenever desired.
CLAIM 2 OK '413
The invention as defined in claim 1, in which said captive nut is rotatably mounted within the aperture of said crank arm.
47. During the prosecution of the '413 patent application, the applicant obtained allowance of claims 1 and 2 over three cited prior patents, by adding thereto the recital of “an inwardly extending hub provided with a plurality of outstanding keys selectively fitting within a like number of said keyways” in the reel hub.
48. Defendant has urged that the following prior patents support his allegation that the '413 patent is invalid in view of the prior art:
UNITED STATES PATENTS
Patentee Date
Henry.. 993,298 1911
Bormnaim_ 1,029,268 1912
Forshee_ 1,134,523 1915
Wenderhold_ 1,348,193 1920
Bradley... 1,575,410 1926
Busch_ 1,601,160 1926
Kendelmann et al_. 1,850,755 1932
Wittel__ 2,005,404 1935
Whelan et al_ 2,460,613 1949
Singleton_ 2,637,667 1953
None of the above prior patents was cited by the Patent Office against the '413 patent application.
49.Henry '298 relates to an adjustable doorknob. Bom-mann '268 discloses a one-way film winding key for a camera. Forshee '523 relates to an adjustable friction reel for a measuring tape. Wenderhold '193 discloses a disconnectable hand crank for film reeling apparatus. Bradley '410 relates *680 to a construction to secure a knob to a tapered shaft by means of a plate having projections engaging recesses in the knob. Busch '160 also relates to a knob mounting construction with lugs to prevent the knob from turning. Kendelmann '755 shows a take-up device for a motion picture projection machine in which the reel supporting shaft carries a pin en-gageable with a slot in the hub of the film reel. Wittel '404 relates to a motion picture film magazine in which the film cores have internal teeth which engage projecting teeth on the driving spindles. Whelan '613 shows a captive thumb screw assembly for a box cover. Singleton '567 relates to a detachable wheel unit for transporting boats and includes a thumb screw provided with a pin and washer to inhibit displacement of the thumb screw. None of the above patents discloses a crank arm with an inwardly extending hub provided with a plurality of outstanding keys to fit within a like number of interior keyways in the ends of a reel hub together with a captive nut to secure the crank arm to a drive shaft in a drum mounted thereon. Claims 1 and 2 of the '413 patent are found to be valid over any reasonable combination of the patents urged by defendant.
THE '642 PATENT
50. The '642 patent, figs. 2 and 3 of which are reproduced herein, is directed to an eraser for removing magnetic recording from a roll of wide recording tape. The '642 magnetic eraser includes a pair of electromagnetic coils 27 and 28 surrounding the poles 23 and 24 of a vertically-mounted U-shaped laminated soft iron core 21. The coils 27 and 28 are connected in a series resonant circuit tuned with a capacitor 33, the series circuit being connected through control switch 43 to a source of 60-cycle alternating current. The roll of wide recording tape to be erased may be supported on horizontal, parallel, spaced rollers 44 and 45, as illustrated in fig. 2, such that its plane is at right angles to the magnetic lines of force between the poles 23 and 24. The roll of tape may be rotated by hand on the supporting rollers so that all portions of the roll are brought under the influence of an *681 intense magnetic field to demagnetize the entire roll of tape and erase any recording therefrom. An indicator 41 is provided to show when the eraser is operative.

51. Plaintiff has relied upon claims 1 and 2 of the '642 patent in its charge of unauthorized use by defendant. Claim 1 is set forth below separated into clauses to facilitate comprehension.
PATENT CLAIM 1 OP '642
In a demagnetizing apparatus for a roll of paramagnetic tape which has been magnetically recorded, a pair of highly inductive electromagnetic coils, a U-shaped core of laminated iron having pole pieces projecting through said coils,
a tuned circuit including said coils for connection with a source of alternating current means to support said roll of tape between said pole pieces with the plane of said roll normal to the lines of force between said pole pieces for rotation of said roll of tape about its central axis to bring all portions of the roll through the erasing field between said pole pieces.

*682

Claim 2 of the '642 patent is dependent upon claim 1 and adds thereto that the support means comprises a pair of horizontally-mounted parallel spaced rollers.
52. In obtaining the allowance of claims 1 and 2 of the '642 patent, applicants argued patentability over the prior art by pointing out that the references failed to disclose a tuned circuit. With respect to claim 1, the applicants specifically pointed out that the patentably distinguishing feature over the prior art was the limitation setting forth the fact that the coils are included in a tuned circuit for connection with a source of alternating current, to produce a concentrated flux field of higher power in a manner not previously disclosed. The distinguishing feature which applicants asserted and relied upon for obtaining allowance of that claim is the series resonant circuit consisting of the capacitor 33 and coils 27 and 28. Plaintiff now contends that the gist of the '642 patent is the provision of demagnetizing apparatus capable of demagnetizing tape in rolled form by supporting the roll *683 between the pole pieces of a core for rotation of the roll of tape abont its central axis to bring all portions of the roll through the erasing field between these pole pieces. In the Patent Office the examiner rejected this type of argument by stating: “With respect to the vertical mounting and the use of two rollers, it is felt that such an arrangement is merely an adaptation of known inspection rigs (tires) to the handling of a reel of tape.”
53. Defendant has urged that the following prior patents support its allegation that the '642 patent is invalid:
UNITED STATES PATENTS
Date Patentee
2,106,233 1938 Beechlyn..
2,134,666 1938 Breth_
2,240,749 1941 Beechlyn..
2,403,424 1946 Euschlag..
2,604,660 1962 (filed 1947) Begun....
None of the listed prior patents was cited by the Patent Office.
54. Beechlyn '749, fig. 1 of which is reproduced herein, relates to apparatus for demagnetizing and discloses a series resonant circuit whereby a powerful magnetic field may be obtained from a relatively small current drawn from the 60-cycle A.C. line. The series resonant circuit includes a coil 1 and a capacitor 3 which is energized by closing switch 6. The '749 patent specification states that while the invention has been illustrated in connection with an air cored, or coil type, demagnetizer, the underlying principle may' *684 equally well be applied to a demagnetizer of the cored type: that is, one in which the magnetic circuit over a considerable span of its path traverses a laminated iron core.

*683

*684 55. Fuscbdag '424 also discloses a series resonant circuit for demagnetization of magnetic bodies and is merely cumulative to the teaching of Beechlyn '749. Defendant cites Begun '550 for its disclosure of an erasing head in which the erasing winding consists of a pair of coils mounted on the legs of a U-shaped laminated core, the coils being energized by a 60-cycle power supply. The core legs are adapted to allow a tape to be passed between them perpendicular to the flux between the poles for magnetically erasing the tape. Breth '656 discloses the use of parallel roller members to support a roll of cloth for unwinding, thus eliminating the need for a central core support. While not in the same environment as magnetic erasers, the '656 patent supports the Patent Office’s statement that it is old in the field of mechanical devices to support annular members on a plurality of roller means which contact the peripheral surface of the supported member, thus eliminating the need for a rotatable central axis support.
56. It is found that Beechlyn '749 anticipates the concept of a tuned circuit in a demagnetizing device to produce a strong magnetic field from low supply current, the concept upon which the '642 applicants relied in obtaining issuance of patent claims over the references cited the Patent Office. The use of a U-shaped laminated core having the leg portions thereof passing through coils for purposes of erasing magnetic tape was known in Begun '550 prior to the earliest invention date which may be accorded the '642 patent. In view of the Patent Office’s rejection of any patentable invention in supporting a roll upon roller members for ease of rotation thereof, and the above teachings of the prior Beechlyn and Begun patents, it is found that it would have been obvious to one skilled in the art at the time of the '642 invention to combine the elements and concepts shown to be individually old in the art as was done in the device claimed in '642 patent claims 1 and 2, and that such combination produced no new or unexpected result. Claims 1 and 2 of the '642 patent are invalid.
*685 57. Summarizing the foregoing findings on validity, patent claims 6,15,16, and 18 of 2,750,449 are invalid (finding 19); patent claims 1 and 2 of 2,826,642 are invalid (finding 56); patent claims 1, 2, 3, 8, 9,11, and 12 of 2,743,319 are invalid (finding 31); patent claims 1 and 2 of 2,803,413 are valid (finding 49); patent claims 7,8, and 9 of 2,845,495 are invalid (finding 42); and patent claims 1, 3, 4, 5, and 6 of 2,915,595 are invalid (finding 44).
LICENSE ISSUE
58. Defendant alleges that the Government is entitled to an irrevocable, nonexclusive, nontransferable, royalty-free license to practice, or cause to be practiced for the Government, throughout the world, the inventions disclosed and claimed in the '495 and '595 patents in suit by virtue of contract No. AF 33 (600)-23918, effective April 6, 1953, entered into between plaintiff and the Government. The relevant clauses of contract No. AF 33 (600)-23918 pertaining to the license issue in the subject suit state, inter alia, as follows:
Part I — Statement of Work
(a) * * * Item (1) In the design and development stage, the contractor shall pursue both the arcuate principle approach and the linear principle approach.
Patent Rights
(a) (i) The term “Subject Invention” means any invention, improvement or discovery (whether or not patentable) conceived or first actually reduced to practice either
(A) in the performance of the experimental, development or research work called for under this contract, or (B) in performance of any experimental, developmental or research work relating to the subject matter of this contract which was done upon the understanding that a contract would be awarded.
59. Progress reports from SoundScriber to the Government contracting officer covering the months of May, June, and July of 1953 indicate SoundScriber’s progress in developing a transverse type recorder-reproducer which *686 would fulfill the requirements of the said contract. The progress report covering the work accomplished during the month of June 1953, included a drawing, dated June 24,1953, which provided a flywheel means to reduce flutter and wow. The draftsman whose initials appear on the drawing had charged a total of 172 hours to the Air Force project under said contract.
60. It is found from the weight of the evidence that plaintiff had reason to believe it would receive said Government contract prior to April 6,1953, and that the devices disclosed and claimed in the '495 and '595 patents in suit were reduced to practice after said contract had been awarded plaintiff and were so related to the express subject matter of the contract as to fall within the terms of said contract. Defendant is entitled to an irrevocable, nonexclusive, nontransferable, royalty-free license to practice, or cause to be practiced for the Government, throughout the world, the inventions disclosed and claimed in the '495 and '595 patents in suit if said patents are valid.
INFRINGEMENT ISSUE
61. The Standard Business Machines (SBM) sound recorder-reproducer, type BD-115B/UN, which plaintiff alleges to be an infringement of the '319, '449, and '413 patent claims in suit, is substantially identical in structure and operation to the device illustrated and described in the '319 patent. The KD-115B/UN includes all of the elements or equivalents thereof, recited in claims 6,15,16, and 18 of the '449 patent and claims 1, 2, 3, 8, 9, 11, and 12 of the '319 patent. If said claims of the '449 and '319 patents, found invalid in finding 57, are subsequently found to be valid, then said claims have been infringed by defendant’s unauthorized use of the BD-115B/UN apparatus.
62. The American Measuring Instruments (AMI) sound recorder-reproducer, type ED-115C/UN, which plaintiff urges to be an infringement of claims 6 and 18 of the '449 patent and claims 1 and 2 of the '319 patent, is similar in construction and operation to the device illustrated and described in the '449 patent. The basic differences between the ED- *687 115C/UN and '449 devices lie in the interconnection between the scan lever and the pressure roller for engagement and disengagement of the pressure roller with the drive capstan, the mechanism for raising and lowering the pressure gate to allow ready loading of the magnetic tape into the recorder-reproducer, and the resilient means for insuring good magnetic contact between the tape and record-reproduce heads. The pressure roller of the RD-115C/UN device is rotatably mounted upon a shaft which is secured to a scan lever shaft in a parallel spaced relation by connecting links. The pressure roller is adapted to be moved into and out of engagement with the capstan drive roller to effect longitudinal movement of the tape by rotation of the scan lever shaft. Raising and lowering of the pressure gate of the RD-115C/UN device is effected through rotation of a load lever shaft having a pin eccentrically secured to the inward end which engages a horizontal slot lining in the support bracket upon which the pressure gate is slidably mounted. The load lever shaft is secured to the pressure gate so that rotation of the shaft necessarily causes the pressure gate to move up or down with respect to the eccentric pin maintaining a fixed vertical position in the slot lining.
63. The conflicting testimony of the parties does not warrant a finding that the accused RD-115C/UN device includes resilient means within the scope of equivalents which may be accorded that term as recited in claim 1 of the '449 patent. Both claims 6 and 18 of the '449 patent incorporate claim 1 by reference. It is found that patent claims 6 and 18 of the '449 patent are not infringed by the accused American Measuring Instruments type RD-115C/UN recorder-reproducer equipment.
64. The patentee of the '319 patent did not find it necessary to recite specific linkage means structure for lifting the pressure roller free from the drive roller or for lifting the pressure gate from the magnetic head in obtaining allowance of claims 1 and 2 over the prior references c-ited by the Patent Office. The arrangement for removing the pressure roller from the drive capstan and raising and lowering the pressure gate in the accused RD-115C/UN device is the full equivalent *688 of that disclosed in the '319 patent. If claims 1 and 2 of the '319 patent found invalid in finding 57 are subsequently-found to be valid, then they have been infringed by defendant’s unauthorized use in the RD-115C/TJN apparatus.
65. The accused sound recorder-reproducers of Olympic Radio & Television, Inc. (Olympic), type RD-142/TJN, and Warwick Manufacturing Corp. (Warwick), type RD-142A/UN, which plaintiff alleges infringe the '495 and '595 patent claims in suit and also claim 6 of the '449 patent, are substantially identical in structure and operation to the apparatus disclosed in the '595 patent. The accused Olympic and Warwick devices differ from the '495 patent structure only by providing for dual channel recording of separate signal sources simultaneously. If the '495 and '595 patent claims in suit found invalid in finding 57 are subsequently found to be valid, then they have been infringed by defendant’s unauthorized use of the RD-142/UN and RD-142A/UN recorder-reproducers.
66. Plaintiff urges that the words arcuate recorded tracks, as recited in claim 6 of the '449 patent, must be interpreted to include the transverse tracks resulting from the devices disclosed in the '495 and '595 patents. The prior art and the application files of the '449 and '495 patents reveal that the patentees of the patents in suit and the Patent Office have clearly distinguished between recorders having a plurality of transducers supported in a plane parallel to the direction of travel of the tape and recorders having the transducers mounted for rotation in a plane perpendicular to the direction of tape movement. The '449 patent is not a pioneer patent. It is found that claim 6 of the '449 patent, even if valid, has not been infringed by the accused Olympic and Warwick devices.
67. The accused tape roll demagnetizes SBM type MX-1373/UN and AMI type MX-1373B/UN are substantially identical in construction, operation, and appearance to the magnetic eraser disclosed in the '642 patent, except for the inclusion or omission of elements not material to the question of infringement of claims 1 and 2 of the '642 patent. Plaintiff’s witness testified to the structural elements comprising demagnetizes types Olympic MX-1724/UN and Warwick *689 MX-1724A/UN. The testimony supports a finding that these Olympic and Warwick demagnetizes included every element recited in claims 1 and 2 of the '642 patent, and it is so found. Patent claims 1 and 2 of the '642 patent, found invalid in finding 57, if found valid, were infringed by the accused demagnetizes manufactured for the defendant by SBM, AMI, Olympic, and Warwick.
68. The accused tape reel clamp and handle provided on the SBM type RD-115B/UN recorder-reproducer include every structural element recited in claims 1 and 2 of the '413 patent. The accused clamp and handle are shown in plaintiff’s exhibit 37. These two claims of the '413 patent, found valid in finding 57, have been infringed by the tape reel clamp and handle construction used on the Standard Business Machines type KD-115B/UN recorder-reproducers and plaintiff is entitled to recover reasonable and entire compensation for unauthorized use by defendant.
69. Summarizing findings 58 through 65 relating to infringement issues, claims 1 and 2 of the '413 patent have been found valid and infringed by the tape reel clamp and handle provided on the SBM type RD-115B/UN recorder-reproducer. The claims of the other five patents in suit, having been found invalid, have not been infringed. If one or more of the several claims found to be invalid is determined by the court to be valid, then certain of the accused apparatus, as set out in the foregoing findings, have been infringed.
CONCLUSION OK LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that claims 6,15,16, and 18 of patent 2,750,449, claims 1 and 2 of patent 2,826,642, claims 1, 2, 3, 8, 9,11, and 12 of patent 2,743,319, claims 7, 8, and 9 of patent 2,845,495, and claims 1, 3, 4, 5, and 6 of patent 2,915,595 are invalid, and that claims 1 and 2 of patent 2,803,413 are valid and have been infringed, and that plaintiff is entitled to recover, and judgment is entered to that effect. The amount of recovery will be in accordance with the stipulation of the parties (filed March 7, I960, after the commissioner’s recommendation that the *690 amount of recovery be determined under Rule 47(c) (2)), whereby judgment is entered for the plaintiff in the amount of $3,000, as reasonable and entire compensation (including interest) for all unlicensed use and manufacture by or for the defendant of the invention described and claimed in U.S. patent No. 2,803,413, and as payment from defendant to plaintiff for a paid-up nonexclusive, irrevocable, nontransferable, royalty-free license to practice, and cause to be practiced for the defendant throughout the world for governmental purposes in the manufacture, use and disposition according to law, of any article or material, and in the use of any method, the invention disclosed and claimed in TJ.S. patent No. 2,803,413.

The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

 Standard Business Machines Manufacturing Company.

 American Measuring Instruments Corp.

 Olympic Radio and Television, Inc.

 Warwick Manufacturing Corp.