**PRATT AND WHITNEY COMPANY, Inc., Ferdinando Carlo Reggio, and Chandler-Evans Corp.**

v.

**The UNITED STATES.**

Nos. 81-57, 82-57, 458-57, 459-57, 5-59, 6-59, 7-61, 113-61.

United States Court of Claims.
May 14, 1965.

Roy E. Petherbridge, Chicago, Ill., for plaintiffs; Petherbridge, O'Neill & Aubel, Chicago, Ill., Robert F. Conrad, Washington, D. C., William E. Dampier, William H. Davis, George E. Faithful, Joseph D. Lazar, Harvey M. Brownrout, New York City, and Augustin M. Prentiss, West Hartford, Conn., of counsel.

E. R. Weisbender, Washington, D. C., with whom was John W. Douglas, Asst. Atty. Gen., for defendant; William D. Hall, Elliott I. Pollock, and Thomas J. Byrnes, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM.

This patent case comes before the court on the merits on defendant's motion pursuant to Rules 62 and 66 that the court adopt the opinion, findings of fact and recommended conclusions of

law filed by Trial Commissioner Donald E. Lane on April 23, 1964. On March 2, 1965, plaintiffs filed a notice, signed by the attorneys for defendant, agreeing to file no exceptions or brief and present no oral argument with respect to any of these cases covered by Trial Commissioner Lane's report of April 23, 1964, with each party to bear its own costs. Upon consideration thereof, and without oral argument, since the court is in agreement with the opinion, findings of fact and recommended conclusion of law of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. It is, therefore, concluded that claims 1–22, 33 and 34 of U.S. Letters Patent 2,673,556 and claims 1, 2, 3, 4, 5, 8, 9, 12, 21, 24, 25, 36, 38, 41, 43, 45, 46, 47, 48, 49, 51, 54, 55, 56, 61, 62, 63, 64, 65, 67 and 71 of U.S. Letters Patent 2,435,- 902, all of the claims here in suit, are invalid and not infringed and the petitions as to these claims are dismissed.

## OPINION OF COMMISSIONER

This case involves eight patent suits filed in accordance with the provisions of 28 U.S.C. § 1498 (1958, Supp. IV). It is found that there is no infringement of any of the claims of the two patents in suit, and that neither of the patents is valid.

Plaintiffs here seek to recover reasonable and entire compensation for unauthorized use of the subject matter defined by several claims of U.S. Letters Patents Nos. 2,435,902, hereinafter referred to as the '902 patent, and 2,673,556, hereinafter referred to as the '556 patent. The '902 patent issued to Ferdinando C. Reggio, one of the plaintiffs here, on an alleged divisional application filed June 28, 1947. The parent application was filed February 3, 1939. The '556 patent was issued to Reggio on an alleged divisional application filed October 13, 1952, the parent application having been filed November 4, 1943. The parties plaintiff in addition to Reggio are Pratt and Whitney Company, Inc., a Delaware corporation with a place of business in West Hartford, Connecticut, and Chandler-Evans Corp., a Delaware Corporation also with a place of business in West Hartford, Connecticut. Chandler-Evans Corp. is a wholly owned subsidiary of Pratt and Whitney Co. Both Pratt and Whitney and Chandler-Evans are successors in interest of limited patent rights in the two patents in suit which rights were transferred in a license agreement by Reggio to the Niles-Bement-Pond Corporation. Reggio, a resident of Norwalk, Conn., is the holder of the legal title to both patents. The relationship of each of the parties to each other and to each of the eight suits is set forth in detail in findings 1 and 2. The right of certain plaintiffs to remain in some of these suits was discussed by this court in Pratt and Whitney Company, Inc. et al. v. United States, 153 F.Supp. 409, 139 Ct.Cl. 540 (1957).

Plaintiffs have charged that Bendix model TJ–A3 fuel control has infringed 24 claims of the '556 patent and have charged that the unlicensed Niles-Bement-Pond and Pierce VS–2 fuel controls, the Bendix AJ–A2 fuel control, the Hamilton Standard JFC–25 fuel control, and the General Electric MFC–2 and IEC controls have infringed various of 31 claims of the '902 patent. The parties agreed to a separation of issues for trial. The questions of infringement and validity of selected patent claims are now before the court.

Both of the patents in suit relate to fuel metering systems designed particularly for use with aircraft engines. The patented fuel controls automatically control the fuel-air ratio of the engine combustible mixture as engine operating conditions change. The patent disclosures and patent claims in suit are described in detail in the accompanying findings of fact. The several issues of law involved are discussed in the following comments.

As a principal defense to liability under either the '902 or '556 patents in suit, defendant has urged that none of the accused controls, the TJ–A3, AJ–A2, VS–2, JFC–25, MFC–2, and IEC contain

the combinations of elements defined in the claims of the patents in suit and that as a result there can be no infringement. Plaintiffs have alleged that the accused controls are equivalent to the constructions defined by selected claims of the patents in suit and that there is consequent infringement.

A patentee, particularly of a combination invention, is entitled to a range of equivalents for his invention as recited in the claims. The purpose of this allowance was described by Judge Learned Hand as " * * * to temper unsparing logic and prevent an infringer from stealing the benefit of the invention." Royal Typewriter Co. v. Remington Rand, Inc., 168 F.2d 691, 692 (2d Cir. 1948). In order to avail himself of the benefits of this doctrine, the owner of the patent rights must show that the accused structure performs substantially the same function in substantially the same way to obtain substantially the some result as does the invention defined in the claims. Sanitary Refrigerator Company v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147 (1929).

Since there are obvious differences in the structure and function of the accused gas turbine controls and the fuel controls defined in the claims of the patents in suit, it is necessary to determine whether plaintiffs have shown sufficient identity of structure, function, and result between the accused controls and the controls defined in the patent claims in suit to make out a case of infringement.

Both the '902 and '556 patents disclose fuel controls used in the operation of internal combustion engines, principally aircraft engines. The evidence shows that these controls were designed for and can be used only in internal combustion engines of the piston type. Thus the claims of these two patents must be construed to define only combinations of elements used on piston type engines. All of the fuel controls accused to infringe the claims of the two patents in suit are designed for and work effectively only on gas turbine engines, which differ substantially in structure and operation from piston type engines. Likewise the fuel controls of gas turbine engines are basically and structurally different and operate in different manners than do the fuel controls described in either the '556 or '902 patents in suit. Under these circumstances there can be no infringement of any of the claims in suit of either the '556 patent or the '902 patent by any of the several accused gas turbine controls. It would constitute an unwarranted expansion of the doctrine of equivalents to hold that these dissimilar gas turbine fuel controls are encompassed by any of the claims relied upon by plaintiffs.

The result here reached regarding the question of infringement finds support for an additional reason. The two Reggio patents '556 and '902 were issued in a very crowded field in which numerous patents relating to subject matter similar to that contained in the two patents in suit have issued. In view of the crowded condition of the art, the claims in suit must be narrowly construed in order to be distinguished at all over the prior art, and it is well settled that the range of equivalents which can be accorded to an invention is dependent on the degree of the invention. See Gamble-Skogmo, Inc. v. Paul E. Hawkinson Co., 98 F.2d 37, 41–42 (8th Cir. 1938). While the claims in suit must be given a very limited construction, it would be only with the broadest interpretation that they could *possibly* be found to read upon the accused gas turbine fuel controls, all of which contain elements and combinations of elements which as previously noted differ widely from those described in either the '556 or '902 patents. Thus even if it were possible to read the words of the claims of the '556 or '902 patents upon the accused controls there would be no infringement because of the substantial differences between the patented controls and the accused gas turbine fuel controls. See also Graver Tank and Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608–609, 70 S.Ct. 854, 94 L.Ed. 1097 (1949).

Defendant has as an additional defense contended that the '556 and '902

patents contain claims which are directed to subject matter previously claimed in the patentee Reggio's earlier issued patent 2,378,036, hereinafter referred to as the '036 patent, and that the two patents in suit are thus invalid because of double patenting. The preliminary question in establishing double patenting is ascertaining whether the language of the respective patent claims has substantially the same import. The courts have held that to have double patenting it was necessary that the claims of the patents cross-read, that is that not only must the practice of the first patent be an infringement of the second but the practice of the second must be an infringement of the first. See Preformed Line Products Company v. Fanner Manufacturing Company, 328 F.2d 265 (6th Cir. 1964). As is noted in the findings of fact, a number of the Reggio '556 patent claims closely correspond with claims contained in the earlier issued '036 patent. For example claim 2 of the '556 patent and claim 14 of the '036 patent do not vary in any material respect, although the wording varies slightly. Each of these two claims in effect defines the same elements and combinations of elements. As a result, the '556 patent constitutes an unlawful attempt to extend the monopoly defined by the '036 patent claims and is void. This accords with the decision of this court in Davis Airfoils, Inc. v. United States, 124 F.Supp. 350, 352, 129 Ct.Cl. 514, 517 (1954), cert. denied, 348 U.S. 950, 75 S.Ct. 437, 99 L.Ed. 742 (1954), in which it was stated that:

"Where an inventor subsequently receives a second patent in which the monopoly expressed in the claim or claims is the same as that covered by the first patent, even though the phraseology of the claims differs therefrom, the 17-year period of monopoly is extended, and the second patent is therefore void because of double patenting, the inventor's rights having been exhausted by the first patent."

Plaintiffs have contended that the defense of double patenting is inapplicable as a defense to the '556 patent because of an alleged strong presumption that is raised in view of the fact the Patent Office issued both the '036 and '556 patents, that the two patents were granted for distinct patentable subject matter. Plaintiffs have also contended that defendant failed to prove double patenting by not comparing the monopolies defined by the claims of the two patents. As for the latter contention, the facts are to the contrary. Defendants during the trial showed that the claims can be cross-read to the extent that a finding of double patenting is warranted. The alleged presumption that patents were granted for distinguishable subject matter is overcome by the fact there is no indication the '036 patent was before the examiner until after the '556 claims had been allowed, after which time the patentee Reggio called the '036 patent to the attention of the examiner.

In view of the finding that the '556 claims are invalid due to double patenting, it is not necessary to consider defendant's charge that the subject matter of the '556 patent had been dedicated to the public.

With regard to the '902 patent, there are indications that the monopolies defined by some of the claims of this patent and some of the claims of the '036 patent are co-extensive, particularly is this true of claim 7 of the '902 patent *which is not in issue* and claim 7 of the '036 patent. The evidence of double patenting involving other claims of the '036 and '556 patents is not sufficient to warrant holding the '902 patent void for double patenting, and we conclude that the question should not be resolved by referring to a claim not in issue. See Pyle Nat. Co. et al. v. Lewin, 92 F.2d 628 (7th Cir. 1937), where it was held that even though claims of the patent not there in issue represented an extension of the monopoly defined by previously issued claims, that the patent was not invalid for double patenting.

Defendant has raised the defense of late claiming. The facts show that the accused TJ–A3 fuel control was in public use and on sale in the United States as early as 1946. The '556 patent application which is an alleged divisional of patent application Ser. No. 508,897 filed November 4, 1943, and which allegedly contains claims which define a combination or combinations of elements used in the accused TJ–A3 control, was not filed in the U.S. Patent Office until October 13, 1952, some six years after the TJ–A3 control was in public use and on sale. Plaintiffs contend that notwithstanding this long delay in the filing of the '556 application and the claims contained therein, they are not barred as a result of late claiming from claiming subject matter relating to the TJ–A3 control because Reggio had been claiming in the parent application Ser. No. 508,897 the subject matter of the '556 patent long before the advent of the TJ–A3. This argument is not supported by the facts. Reggio presented no claim to the Patent Office during the prosecution of the parent application Ser. No. 508,897 which could *possibly* cover the TJ–A3 until claim 72 was presented in September 1951, at least 5 years after the TJ–A3 had been in public use and on sale. During this delay in the claiming of the subject matter of the present '556 patent claims, defendant obtained intervening rights due to the public use and sale of the accused TJ–A3 control which preclude liability to plaintiffs under any patent claim asserted under the '556 patent. Reggio's untimely presentment of the subject matter of the '556 patent claims either invalidates these claims in accordance with the late claiming doctrine announced in Muncie Gear Works, Inc. et al. v. Outboard Marine & Manufacturing Co. et al., 315 U.S. 759, 62 S. Ct. 865, 86 L.Ed. 1171 (1942), or they must be narrowly construed to avoid infringement by the TJ–A3 control to accord with the holding of the Supreme Court in Railway Company v. Sayles, 97 U.S. 554, 563, 24 L.Ed. 1053 (1878), in which it was stated:

" * * * Courts should regard with jealousy and disfavor any attempts to enlarge the scope of an application once filed, or of a patent once granted, the effect of which would be to enable the patentee to appropriate other inventions made prior to such alteration, or to appropriate that which has, in the meantime, gone into public use."

It was stated more recently in Tropic-Aire, Inc. v. Sears, Roebuck and Co., 44 F.2d 580, 593 (8th Cir. 1930):

" * * * The public, therefore, was using the Modine heater in automobiles before claim 7 of Caesar was filed. The public would appear, therefore, to have some intervening rights which should not be appropriated by a patentee."

It is further noted that there was an expiration of about 8 years between the filing date of the parent application Ser. No. 508,897 and the filing date of the alleged divisional '556 application containing claims relating to subject matter not in the original claims or in any presented to the Patent Office until, as noted above, claim 72 was presented in September 1951. In the case of Webster Electric Co. v. Splitdorf Electrical Co., 264 U.S. 463, 466, 44 S.Ct. 342, 343, 68 L.Ed. 792 (1924), the Supreme Court was faced with a similar situation wherein the patent owner was relying upon claims submitted in a divisional application over 8 years after the filing of the original application. The Supreme Court stated:

" * * * the long delay of Kane and his assignee in coming to the point tends strongly to confirm the view that the final determination to do so was an exigent afterthought, rather than a logical development of the original application. We have no hesitation in saying that the delay was unreasonable, and, under the circumstances shown by the record, constitutes laches, by which the pe-

titioner lost whatever rights it might otherwise have been entitled to."

There is no satisfactory explanation of record for Reggio's long delay in presenting claims to the Patent Office directed to the subject matter here asserted to be protected by the '556 patent, and this unwarranted delay supports following the decision in the Webster case and finding the claims invalid due to laches.

In challenging the validity of the two patents relied upon here by plaintiffs, defendant has produced numerous prior publications and patents which it contends demonstrate that the subject matter of these patents was unpatentable at the time Reggio sought patent protection in the Patent Office. The more important prior art references relied on by defendant are discussed in detail in the accompanying findings.

The patent statutes provide:

"35 U.S.C. § 102. Conditions for patentability; novelty and loss of right to patent

"A person shall be entitled to a patent unless—

"(a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent, or

"(b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or

\* \* \* \* \* \* \*

"(e) the invention was described in a patent granted on an application for patent by another filed in the United States before the invention thereof by the applicant for patent, or

\* \* \* \* \* \* \*

"35 U.S.C. § 103. Conditions for patentability; non-obvious subject matter

"A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains. Patentability shall not be negatived by the manner in which the invention was made."

Of the 11 prior art references (finding 24)[1] relied upon to show invalidity of the '556 patent claims, the Aero Digest ar-

---

24. Defendant has advanced the following allegations in support of its contention that the Reggio patent 2,673,556 is invalid:

(a) The claims of the Reggio patent 2,378,036 which issued June 12, '1945, on an application filed July 7, 1941, fully cover the claimed subject matter of the '556 patent and the latter is invalid for double patenting.

(b) The subject matter of the claims of the '556 patent relied upon was presented for the first time in Reggio's application for patent 6 years after the TJ–A3 control was in public use, and that the claims are thus invalid due to late claiming and laches.

(c) The subject matter of the '556 claims here in issue was fully dedicated to the public in 1945 by the issuance of Reggio patent 2,378,036.

(d) The claims to the '556 patent are not supported by the specification.

(e) The claims of the '556 patent in issue are anticipated by prior patents and publications having dates earlier than the earliest possible date to which the subject matter of these claims is entitled. These prior patents and publications are as follows:

| | | |
|---|---|---|
| Hillhouse | 1,483,883 | Feb. 19, 1924 |
| Jivhovitch | 2,193,927 | Mar. 19, 1940 |
| Chandler | 2,224,472 | Dec. 10, 1940 |
| Hogg | 2,303,640 | Dec. 1, 1942 |
| Wunsch | 2,341,257 | Feb. 8, 1944 |
| Mock | 2,414,322 | Jan. 14, 1947 |
| Mock | 2,447,261 | Aug. 17, 1948 |
| Beardsley | 2,447,264 | Aug. 17, 1948 |
| Beardsley | 2,447,265 | Aug. 17, 1948 |
| Beardsley | 2,447,266 | Aug. 17, 1948 |
| Aero Digest, article, page 128 | | April 1940 |

ticle dated April 1940, the Wunsch patent 2,341,257, 1944, the Chandler patent 2,-224,472, 1940, and the Mock patents 2,-414,322, 1947, and 2,447,261, 1948, are considered most pertinent.

The Aero Digest article, a prior publication discussed in finding 33, describes the Bendix-Stromberg injection carburetor which is a structural and functional equivalent of the fuel control described and claimed in the '556 patent. This prior publication fully anticipates all of the claims of the '556 patent in suit and renders them invalid in accordance with the provisions of paragraphs (a) and (b) of section 102 of the statute quoted above. Furthermore the Bendix-Stromberg carburetor was in public use and on sale prior to February 1939, over 4 years prior to the filing of the parent application Ser. No. 508,897 of the '556 application, the earliest date upon which plaintiffs rely. Consequently the '556 patent is invalid since the patentee Reggio failed to meet the requirements of paragraph (b) of section 102 of the patent statute. The Mock patent 2,447,261 discloses a fuel control possessing all of the elements of the Bendix-Stromberg carburetor which are also common to the '556 control and is thus equally applicable as an invalidating prior art reference.

The Wunsch patent which is discussed in findings 37, 90, and 91 discloses a fuel control possessing structural parts and elements which closely correspond to the provisions of the '556 claims in suit. As is noted in findings 37 and 91, plaintiffs' witnesses, Mr. Chandler and Mr. Prentiss, the latter plaintiff Chandler-Evans Corp.'s patent counsel, in correspondence written prior to the present suits, expressed the opinion that a number of the '556 and '902 patent claims in suit were anticipated by the Wunsch patent and that the Wunsch patent had a narrowing effect upon *all* of the '556 and '902 patent claims. These opinions, previously made by Chandler and Prentiss but later modified at the trial, are not binding upon plaintiffs here, and do not estop them from asserting the validity of the claims of the two patents in suit. It is noteworthy, however, that officials of certain plaintiffs at least at one time did not regard a number of the claims, upon which they now rely, as being valid, and thought that *all* of the claims of both patents had to be narrowly construed. In view of the close similarity of the subject matter of the Wunsch patent and the '556 patent claims it is found that the '556 patent claims in suit did not define a patentable advancement in the art.

The Chandler patent discussed in findings 36 and 92 discloses a pressure fed carburetor which fully meets a number of the '556 patent claims in suit, and, with the addition of a flyball governor thereto in a manner which would have been obvious to one skilled in the art in accordance with the provisions of section 103 of the patent statute quoted above, all of the '556 patent claims in suit were anticipated by the Chandler patent so modified.

The Mock patent 2,414,322, which was cited by the patent examiner during the prosecution of the '556 patent application, also discloses a fuel control which is substantially identical structurally and operationally to the '556 control. Reggio avoided this prior patent in the Patent Office by contending that his control possessed a *governor* which operated the fuel-air ratio control valve of the '556 control as a function of engine speed. It is noted that the Mock control includes a fuel-air ratio control valve moved as a function of engine speed in a manner similer to that of the '556 control and there was thus no basis for distinguishing the '556 control on the grounds that it, unlike the prior art, contained a governor.

Of the prior art references cited by defendant, plaintiffs specifically challenge the applicability of the Bendix-Stromberg carburetor and the Mock patent 2,414,322. It is argued by plaintiffs that the '556 fuel metering control is distinguishable from either the Mock control or the Bendix-Stromberg carburetor because the enrichment valves used in the latter two devices respond solely to engine speed irrespective of changes in

altitude or air pressure. This difference in the structure of the Mock and Bendix-Stromberg controls and in the '556 control is not patentably significant since the enrichment valves of both are controlled in a manner similar and equivalent to the manner in which the '556 valve is controlled.

The most pertinent of the prior art references relied upon by defendant to show the invalidity of the '902 patent are the Reggio patent 2,378,036, the Pescara patent 2,292,288, and the Wunsch and Chandler patents mentioned above. All of these prior patents are discussed in detail in the accompanying findings.[2] These prior patents disclose all of the elements and combinations of elements defined by the '902 patent claims in suit. For this reason the '902 claims do not meet the requisites for patentability specified in section 102, paragraphs (a), (b), or (e) quoted above.

Plaintiffs in urging the inapplicability of the prior art references relied upon by defendant have made a brief analysis of each of these references and contend that they do not disclose the essential features of the '902 patent. Plaintiffs in reaching this conclusion relied on their four paragraph characterization (finding 42) of the alleged invention described in the '902 patent, and did not compare the actual combinations of elements recited by the various claims of the '902 patent in suit with the prior art cited by defendants. Assuming while not conceding that the prior art does not meet the combination of elements recited in plaintiff's four paragraph characterization of the alleged invention of the '902 patent, this is immaterial in making a determination of the validity of the '902 patent claims. It is only the claims themselves which can be considered in determining whether the requirements specified in the patent statutes have been met. See Paper Bag Patent Case (Continental Paper Bag Co. v. Eastern Paper Bag Co.), 210 U.S. 405, 419, 28 S.Ct. 748, 52 L.Ed. 1122 (1908). Courts have long held that a claim is not

2. 88. Defendant has urged that the claims of the '902 patent in suit are invalid for lack of novelty and lack of patentable advance or in the alternative must be so limited as not to be infringed in view of the following prior patents:

| | | |
|---|---|---|
| Esnault-Pelterie | 1,312,899 | Aug. 12, 1919 |
| Riege | 1,467,333 | Sept. 11, 1923 |
| Hillhouse | 1,483,883 | Feb. 19, 1924 |
| Davol | 1,583,671 | May 4, 1926 |
| Simmen | 1,975,624 | Oct. 2, 1934 |
| Dodson | 2,031,527 | Feb. 18, 1936 |
| Lauret | 2,034,144 | Mar. 17, 1936 |
| Alden | 2,156,933 | May 2, 1939 |
| Muselier | 2,177,908 | Oct. 31, 1939 |
| Heinzelmann | 2,179,628 | Nov. 14, 1939 |
| Heinzelmann | 2,180,108 | Nov. 14, 1939 |
| Banning | 2,213,683 | Sept. 3, 1940 |
| Schweizer | 2,213,997 | Sept. 10, 1940 |
| Jung | 2,219,994 | Oct. 29, 1940 |
| Chandler | 2,224,472 | Dec. 10, 1940 |
| Becker | 2,244,669 | June 10, 1941 |
| Neugebauer | 2,261,856 | Nov. 4, 1941 |
| Udale | 2,264,347 | Dec. 2, 1941 |
| Pescara | 2,292,288 | Aug. 4, 1942 |
| Gosslau | 2,297,213 | Sept. 29, 1942 |
| Jung | 2,306,953 | Dec. 29, 1942 |
| Wunsch | 2,341,257 | Feb. 8, 1944 |
| Reggio | 2,378,036 | June 12, 1945 |
| Mock | 2,390,658 | Dec. 11, 1945 |
| Mock | 2,426,153 | Aug. 19, 1947 |
| Mock | 2,447,261 | Aug. 17, 1948 |
| British Saurer | 482,864 | Apr. 6, 1938 |
| French Rateau | 801,587 | Aug. 7, 1936 |

"like a nose of wax, which may be turned and twisted in any direction" to make it include something not expressly recited. See White v. Dunbar, 119 U.S. 47, 51, 7 S.Ct. 72, 74, 30 L.Ed. 303 (1886). See also Kuhne Identification Systems v. United States, 82 Ct.Cl. 237, 258 (1936). The elements of the '902 patent claims in suit when individually compared with the prior art do not define a patentable advancement over this art and are found invalid.

A number of the claims in suit are vague, ambiguous, and indefinite and fail to meet the requirements of 35 U.S.C. § 112 which provides:

"* * *

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

"* * * *"

The purpose of the above section is to apprise the public of the limits of the invention so that others may use that which is not protected. Reggio in many instances has left in doubt what he regarded as the boundaries of his inventions and just what he regarded as his inventions. This doubt has made it impossible for the public to ascertain the limits of his inventions, if any.

Defendant has urged that because plaintiffs Pratt and Whitney Company, Inc. and Chandler-Evans Corp, are not the owners of the patents in suit they do not have sufficient interest in the patents to maintain these suits. This matter has been previously resolved by this court in Pratt and Whitney Company, Inc. et al. v. United States, 153 F.Supp. 409, 139 Ct.Cl. 540 (1957) and need not be given further consideration here.

Defendant has also contended that it received an implied license to use the subject matter of the two patents here in suit because certain plaintiffs obtained these patents as a result of knowledge obtained through a confidential relationship with defendant, and that plaintiffs are therefore prohibited from asserting a claim against defendant. The evidence does not substantiate this contention.

It is recommended that the court find that none of the claims relied upon by plaintiffs are infringed by any of the accused fuel controls and that the Reggio patents 2,435,902 and 2,673,556 are invalid.