**UNCAS MANUFACTURING COMPANY**

v.

**McGRATH–HAMIN, INC.**

No. 2904.

United States District Court
D. Rhode Island.

Jan. 6, 1967.

Herbert B. Barlow, Jr., Providence, R. I., for plaintiff.

Elliot A. Salter, Providence, R. I., for defendant.

## OPINION

PETTINE, District Judge.

This is an action for patent infringement brought pursuant to 35 U.S.C. § 281 and 28 U.S.C. §§ 1338(a) and 1400(b) alleging infringement by the defendant of United States Patent #2,835,117, relating to a finger ring construction, issued to the plaintiff on May 20, 1958 (Exhibit 1) by reason of the defendant's manufacture and sale of two different forms of finger rings.

Both the plaintiff and defendant are Rhode Island corporations engaged in the manufacture and sale of finger rings.

The patent relates to a gem setting with biased ornamental saddle member. In the instant patent there are four claims, but by stipulation claim 4 is not in issue since no allegation of infringement of that claim has been made.

Claim 1 includes the following elements: In a finger ring

a) A ring shank

b) An auxiliary ornamental unit including a strap

c) A gem setting having opposite side walls, each provided with a recess therein extending inwardly from the upper edge thereof, said strap extending across said setting in said recess.

d) A gem secured in said setting and engaging said strap to hold the same secured in position and means to secure said shank to said setting.

Claims 2 and 3 are dependent claims.

Claim 2 simply adds thereto the limitation that, "said ornamental unit comprises ornamental members secured to said strap on each side of said setting."

Claim 3 adds thereto the limitation that "said ornamental unit comprises second gem settings secured to said strap at either side of the first said gem setting."

The defendant corporation for many years prior to 1959 manufactured and sold jewelry including finger rings. It

marketed rings with separate auxiliary ornaments and a gem setting with a saw tooth edge comprising two upstanding points on each side spaced from each other and spaced from the ends of each side. (Exhibit 4)

Samples of some of the rings made by the defendant prior to 1959 were introduced and marked as Exhibits 3 and C.

In November 1959 or thereabouts, the defendant changed its manufacture so as to enable it to make rings with ornaments connected together by a strap using the same gem setting it had prior to 1959, which manufacture it continued to about November 1961. The changed construction is identified herein as Exhibits 8 and 13.

The plaintiff sent written notice alleging infringement to the defendant on October 25, 1961 (Exhibit 16), whereupon the defendant made a structural change using another setting identified herein as Exhibit 10. This exhibit will show that the defendant changed the construction of its setting by cutting off the saw teeth or points on the side walls over which the strap is extended, leaving the saw teeth or points on the ends.

There are actually two different structures before the court that are alleged by the plaintiff to be infringements of its patent. The first are those made by the defendant from 1959 through 1961 identified herein as Exhibits 8 and 13 utilizing the setting identified herein as Exhibit 4; the second is that embodied in the rings made by the defendant from 1961 which rings are identified herein as Exhibits 12 and 15 embodying the setting identified herein as Exhibit 10.

The strap used in connecting the auxiliary ornaments in the rings manufactured by the defendant from 1959–1961 crosses the side wall of the setting over which the strap is extended and is centrally located in a plane.

The setting used is made up of prongs or saw teeth with a V shape between each prong.

The plaintiff contended that the strap used was of a width, where it crosses the side wall of the setting, less than the distance between the points of the saw teeth on the side wall over which the strap extended and that the strap is located in the space or recess between the saw teeth.

The plaintiff further contends that the spaces between the saw teeth are recesses; that the utilization of the recess is therefore an infringement of its patent. To put it another way, the plaintiff alleges that both of the defendant's accused structures have every element of its claim.

The defendant contends that none of its rings comprise a setting having upper recesses in the opposite side walls of the setting, receiving therein the strap of the ornamental unit.

The defendant concedes as to Exhibits 8 and 13 that there is a V shape space or recess formed between the saw teeth on the edge of the side walls of the gem setting as shown in Exhibit 4 and that infringement does exist if the strap is in such recess. However, as to the form adopted after notice of infringement as shown in Exhibits 10 and 11, the defendant asserts that there is no recess extending inwardly from the upper edge of the side wall.

## VALIDITY

■ The defendant questions the validity of the patent. The court takes no issue with defense counsel when he argues that there are two basic reasons why a patent granted by the Patent Office may prove to be invalid, namely:

1. The patent invention fails to possess novelty. 35 U.S.C. § 102(b).

2. That 35 U.S.C. § 103 requires an invention to be unobvious.

It is true that if a patent is in existence and comes up in litigation and the defense inserts the defense of invalidity and is able to find prior art—whether it be one patent or a combination—that teach all of the elements of the patent claim, then the patent lacks novelty because there is nothing new in the patent

since everything is shown in the prior art.

■ It is also true that if the prior patents don't quite cover everything that was in the patent, it doesn't automatically mean the patent is valid. The patent also has to be something that would not have been obvious to someone reasonably skilled in the art.

In the case at bar, the defendant contends that the patent in suit is anticipated by the Pejar patent #2,035,244 Exhibit F.

The defense readily admits this is the basic reference on which it is relying.

This patent was not recited by the Patent Office during its prosecution of the plaintiff's patent.

The defendant argues that Mr. Nicholas A. Pandiscio, an expert who testified, was able to read each and every element of the patent in suit in the Pejar patent. If this were so, then we may well have an invalid patent. However, the court cannot accept this conclusion. This very witness on whom the defense relies so heavily stated in cross examination:

a) That the Pejar patent did not have an ornamental trim in the sense of the patent in suit.

This witness used ornamental trim only in the sense that it is pleasing to the eye and in no other way. He further admitted that nowhere in the Pejar patent is the word "strap" used but on the contrary described it as the widened portion of the angular body number 20. In other words, it was nothing more than a solid piece with the shank of the ring.

The court fails to see any ornamental feature in the flattened portion of the Pejar patent which in essence is the ring shank. The purpose is obviously functional and is a far cry from the auxiliary ornaments of the patent in suit. The ornaments in the present patent are separate and apart from the shank and the very essence of the invention is to attach them to a strap, separate and apart from the ring shank, which strap is placed in the gem setting in a recess in the walls thereof. Here is the basic, obvious and unquestioned difference between the Pejar patent and the one in issue.

The entire concept of the Pejar patent is a single shank which goes completely around the finger and the prongs of the gem setting come up from beneath it and go through a hole in it.

The court sees this as a single functional shank and in no way ornamental in the sense of the patent in suit. Nor can this court conclude nor does it find that the so-called flattened portion of the Pejar patent is a strap. It is part and parcel of the entire shank which encircles the finger and it is in every sense the ring shank. This is far different from the case at bar.

The patent in suit has an entirely different concept. It attaches two auxiliary ornaments which are on either side of a main ornament. This is entirely lacking in the Pejar patent to the extent of not even having auxiliary ornaments, and as a consequence has no connecting strap. They simply do not exist in the same sense as they do in the Lutrario invention.

Nowhere in the prior art introduced by the defendant does the court find auxiliary ornaments connected by a strap placed in a gem setting fitting with recesses of the gem setting walls at each end, with a stone set over this strap in the gem setting and the stone set by means of its prongs so as to press the strap down into its setting and hold these in the assembled position for final tacking and soldering.

This is new—not found anywhere by the defendant or the examiner during the prosecution of the claim.

■ The court finds that the prior art relied on by the defendant does not teach all of the elements claimed in the patent in suit; that the patent in suit does not lack novelty; that the patent in suit is something that would not have been obvious to someone reasonably skilled in the art; that the patent in suit is good and valid as to each of its claims numbered 1, 2 and 3.

The defendant has also set up two other grounds of alleged patent invalidity, namely, double patenting and insufficient disclosure. The court is not impressed by either of these arguments.

### Double Patenting

The plaintiff has clearly destroyed the defendant's contention in this regard. The court need only reassert the plaintiff's argument in this regard. The double patenting argument is based on the Lutrario patent #2,763,140. Patent #2,763,140 was cited in the file history of the patent in suit. This issue is resolved in a number of ways.

■ *First*: It cannot be disputed that primarily, double patenting is a question for the Examiner to decide before he issues a second patent. In the case at bar, a second patent was, indeed issued. ·

*Secondly*: The defendant's own expert, in cross examination, stated as follows:

"135. Q. It's a different invention then, isn't it than the patent in suit?

A. Yes."

Further the testimony is:

"129. Q. I'll ask you to look at Exhibit F, which is the Lutrario patent #2,763,140, and refers to somewhat different construction than the one in suit. Have you read the claims of this patent, Exhibit F?

A. Yes, I read them."

"130. Q. Those claims don't cover the patent in suit, do they?

A. No."

It is the court's opinion this is sufficient to overcome the charge of double patenting. The two patents do not cross read and in addition, the record has the above supporting testimony that the inventions are different. Pratt & Whitney Company, Inc. v. United States, 345 F.2d 838, 170 Ct.Cl. 829.

■ The court finds that there is no double patenting.

### Insufficient Disclosure

35 U.S.C. § 112 states:

" * * * [t]he specification shall contain a written description of the invention * * * in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same * * * "

■ The defendant's argument in this regard is totally without merit. The patent in suit clearly describes the invention and does set forth the best mode contemplated by the inventor of carrying out his invention. The specification teaches all that is necessary for practice of claims. This court ned not be repetitive and again travel what has been stated herein as to the recess and side walls. It is the opinion of this court that anyone only moderately skilled in the trade would know what to do. The court found no difficulty in understanding the recess —it was clearly obvious. A simple reading of the description is sufficient to overcome the defendant's contentions.

The defendant has failed to overcome the presumption of validity of the patent and this court has not been convinced beyond a reasonable doubt—though in this case the court did not need this margin of proof, for the defendant has failed to convince the court to any degree.

■■ A patent shall be presumed to be valid. The burden of establishing invalidity shall rest on the party asserting it.

■ Any reasonable doubt will be resolved against the party alleging the invalidity of a patent, Jeoffroy Mfg., Inc. v. Graham, 5 Cir., 219 F.2d 511.

### INFRINGEMENT

The court feels compelled to first discuss the purposes of the recesses which the plaintiff alleged achieved an alignment of the strap and prevented shattering of the gem when the prongs were brought to bear against it, and the plaintiff's further contention that in order to

prevent shattering of the gem, the walls of the setting over which the strap extends, namely, the side walls must be lower than the end walls.

This point need not be labored at all, for how can one doubt what he sees and the court did indeed see, not the shattering of a gem, but rather the plaintiff's argument in this regard.

To begin with there is absolutely no mention whatsoever in either the patent or its file history of the fact that the side walls of the setting must be lower than the end walls in order to prevent shattering of the stone.

Exhibit 1 is a ring that was actually made and sold by the defendant and which embodies an ornamental unit comprising a strap going across the setting exactly as in the patent in suit, except that the walls of the setting have no recesses whatsoever for receiving the strap, but rather the strap simply passes over the upper edge of the walls of the setting, the height of which is constant all around the setting. Exhibit M, a similar ring, was stone set during a demonstration performed in court and it was completely obvious to all in the courtroom that no shattering of the stone took place. A number of rings were successfully stone set by the defendant in the courtroom.

As to alignment, the defendant unmistakably developed in the course of the trial that in the patent the function of the recesses in the gem setting were for the purpose of aligning the auxiliary ornamental trims to the shank, and further that the removal of portions of the setting as colored red in Exhibit 2 certainly would result in elimination of the aligning function.

These facts are unmistakably certain in the court's mind; the defendant further conclusively established that the gem setting it used during this period had been employed by it for a long period of time prior to the invention; though it changed its manufacture in 1959 so as to connect the auxiliary ornaments with a strap and that it did this intentionally after seeing a ring as manufactured by the plaintiff, it simply did not

utilize any recess. The defendant's evidence proved convincingly that the straps, when placed in the gem setting, went over the side wall and not between the prongs of its settings, or as it might be said, in the recess. It further proved that this did not align the auxiliary trim settings with the shank; to further substantiate this position, it requested and the court permitted plaintiff's Exhibit 8, the ring allegedly infringing the patent, to be disassembled before the court by removing the gem and be examined for the purpose of determining whether or not the straps utilized a recess; that is if they passed between the V shape of the prongs.

The patentee himself, after careful examination, conceded that the strap was not sitting down between the teeth as did the plaintiff's own witness, Mr. Ernest P. Gladding.

Mr. Gladding clearly stated the strap was above the points of the teeth in Exhibit 8 and he further stated that there is no interlocking between the strap and the setting in Exhibit 8, which interlocking would obviously take place if the trim straps were located within the V space.

In this same vein, the court cannot disregard the testimony of Mary Inglesi and Jeannette LaChance who clearly testified that there is no interlocking between the trim and the setting in Exhibits 8 and 13 which would exist if a recess was utilized.

As against this overwhelming evidence, the plaintiff offers very little.

Mr. Raymond Lutrario testified that he examined approximately twelve of the defendant's rings manufactured from 1959–1961 and found they utilized a recess, that is the straps connecting the auxiliary ornaments on each side, after being centered in the setting, went between the prongs and as the V shape between the prongs is a recess, thus utilized a recess.

This testimony failed to impress this court. He readily admitted that these rings were examined to see if they in-

fringed the patent and yet they were not saved nor was the examination corroborated by witnesses or recorded in any manner. This evidence was the life blood of its case and they did nothing to preserve it. This is shocking and more especially so since the very ring (Exhibit 8) they introduced as an example of the infringement was, on examination in open court, found not to be an infringement; the plaintiff's own witness testified to this.

The plaintiff thereupon introduced into evidence as Exhibit 31 a similar ring that had been supplied to it by the defendant as manufactured by it. This obviously was for the purpose of overcoming the testimony relative to Exhibit 8 after it had been disassembled in open court.

Exhibit 31 was also disassembled in court and again the plaintiff failed completely to prove infringement in that it utilized a recess. Here again the plaintiff's own witness, Mr. Raymond Lutrario, evidenced doubt that the space between the prongs or the recess was employed.

The defendant's expert, Mr. Nicholas A. Pandiscio, on the other hand, unquestionably stated the straps went over the sides of the setting and did not employ or use the recess.

On this point the court, by its own observation, finds itself in total agreement with the defendant's expert.

The evidence is undeniably clear and abundantly weighted against the plaintiff's contentions. It falls far short of proving infringement by a preponderance of the evidence.

The applicable law is clear and convincing as to the various propositions discussed.

 A.) *Infringement Must be Proved by a Preponderance of the Evidence.*

Becker v. Webcor, 289 F.2d 357 (C.A. ´7), cert. denied. 368 U.S. 970, 82 S.Ct. 445, 7 L.Ed.2d 398.

Briggs v. M. & J. Diesel Locomotive Filter Corp., D.C.Ill., (1964) 228 F. Supp. 26.

> "Plaintiffs have the burden of proving infringement of the patents by a preponderance of the evidence."

See: Nyyssonen v. Bendix Corp., D.C. Mass. (1963) 137 U.S.P.Q. 853; Corning Glass Works v. Federal Glass Co., 6 Cir., 239 F.2d 674.

B.) *Claims of a Patent Define the Scope of Coverage and Protection Afforded Thereby.*

The plaintiff claimed a recess, and the utilization of the same, "a gem setting having opposite side walls, each provided with a recess therein extending inwardly from the upper edge thereof, said strap extending across said setting in said recesses." As hereinbefore discussed, the defendant did not utilize said recess (Exhibits 8 and 13).

This is a claim of the plaintiff's patent.

In White v. Dunbar, 119 U.S. 47, at pages 51–52, 7 S.Ct. 72, at page 74, 30 L.Ed. 303 the court states as follows:

> "Some persons seem to suppose that a claim in a patent is like a nose of wax, which may be turned and twisted in any direction, * * * so as to make it include something more than, or something different from, what its words express. * * * The claim is a statutory requirement, prescribed for the very purpose of making the patentee define precisely what his invention is; and it is unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms."

Also note The Texas Company v. Globe Oil & Refining Company, 7 Cir., 225 F.2d 725, wherein the court states:

> "[C]laims [are] designed to fix metes and bounds of the invention."

 The language of a patent claim must be interpreted in the light of the patent specification and drawings and

where necessary in the light of the file wrapper of the patent.

Rule 75(d), Rules of Practice of the United States Patent Office in Patent Cases, November 1965, reads:

> "The claim or claims must conform to the invention as set forth in the remainder of the specification and the terms and phrases used in the claims must find clear support or antecedent basis in the description so that the meaning of the terms in the claims may be ascertainable by reference to the description."

There are many cases in support of this proposition. Some are as follows:

Lakewood Engineering Company v. Stein, 8 F.2d 713, 715 (CCA 6)—

> "An inventor may choose his own language in describing his invention and in stating his claims, but that description is the basis of the government's action in granting him patent monopoly, and must be construed in accordance with its plain, usual, and ordinary meaning, the same as if written into any other contract. * * * When a claim is clear and distinct, a patentee may not go beyond the words of his contract for the purpose of establishing infringement, and the range of equivalents must be measured by what is both described and claimed." See also R. M. Hollingshead Co. v. Bassik Mfg. Co., 6 Cir., 73 F.2d 543 (CCA 6), affirmed 298 U.S. 415, 56 S.Ct. 787, 80 L.Ed. 1251; Tipper Tie, Inc. et al. v. Hercules Fasteners, Inc., D.C., 130 F. Supp. 3.

It is well established that the omission of an element from a patent claim avoids infringement of that claim. In Matarazzo v. Isabella, D.C., 138 F. Supp. 86, the court stated:

> "In a patent such as the plaintiff's every ingredient or element is presumed to be material. The omission of any one ingredient or element is enough to avert a charge of infringement even if the omitted ingredient or element is not essential to the process." (Cases cited.)

Other cases supporting this well established proposition of law are as follows:

Fay v. Cordesman, 109 U.S. 408, 3 S. Ct. 236, 244, page 421, 27 L.Ed. 979—

> "The claims of the patents sued on in this case are claims for combinations. In such a claim, if the patentee specifies any elements as entering into the combination, either directly by the language of the claim, or by such a reference to the descriptive part of the specification as carries such element into the claim, he makes such element material to the combination, and the Court cannot declare it to be immaterial. It is his province to make his own claim and his privilege to restrict it. If it be a claim to a combination, and be restricted to specified elements, all must be regarded as material, leaving open only the question whether an omitted part is supplied by an equivalent device or instrumentality."

See Hall-Mammoth Incubator Co. v. Teabout, 215 F. 109 (C.A.2); Sears, Roebuck & Company et al. v. Minnesota Mining and Manufacturing Company, 4 Cir., 243 F.2d 136.

Dry Hand Mop Co. v. Squeez-Ezy Mop Co., 17 F.2d 465 (CCA 5)—

> "The law is conceded by counsel to be that, to constitute infringement of such a patent, the infringer must be shown to have used every ingredient of the combination. An omission of any one element prevents infringement."

The other alleged infringement concerns the ring manufactured by the defendant from and after it received from the plaintiff on October 25, 1961 a letter accusing it of infringement.

As has been stated, in November of 1961 the defendant made a second change in its ring construction by cutting off the saw teeth on the opposite edges of the gem setting over which edges the strap of the auxiliary ornament extended.

This caused the sides of the gem setting over which the strap extends to be of the same height from end to end and lower than the other two sides of the setting at right angles to these sides.

The question is whether or not this constitutes a recess.

It is the court's opinion and finding that this does not constitute a recess within the claim of the plaintiff's patent.

As has been pointed out, the plaintiff's patent recites in claim 1, among other things, a gem setting having opposite side walls each provided with an upper recess therein. In other words, a wall with a portion cut out to make up a recess. This is a far cry from a smooth wall. The testimony also established that such a smooth wall would not lock the one piece trim—i. e. the auxiliary ornaments at each end connected with a strap so as to align the trim at each end with the shank which is the function for such recess as spelled out in the plaintiff's patent.

Exhibit 10 is the setting sued in Exhibits 12 and 15 which illustrate the second construction made by the defendant from 1961.

It is obvious there are no recesses in the side wall as called for by claims 1 through 3 of the plaintiff's patent. Further, Mr. Nicholas A. Pandiscio unequivocally testified to this effect.

The question remains, however, whether the lowered side walls are equivalents of the recess called for by the patent claims.

"Any patent has some range of equivalents, unless form is made the indispensable thing, and the rule is especially applicable where an infringer takes the whole gist of the invention. * * * The range of equivalents to which an inventor is entitled is broad in an uncrowded art and narrow in a crowded one * * *

If a claim is a narrow one in a crowded art, it should not be broadly construed." Walker on Patents, Dellers Edition, Volume II, pages 1212 and 1213.

[14] In order for one structure to be the "equivalent" of another, it is necessary that the alleged equivalent be capable of performing the same function as the other structure.

"There are two tests of equivalency: (a) identity of function; (b) substantial identity of way of performing that function." Walker on Patents, page 1703, "Tests of Equivalency."

"One thing to be the equivalent of another, must perform the same function as that other." Walker on Patents, page 1704.

It is undisputed Exhibit 10 setting is not capable of achieving the aligning function discussed and emphasized throughout the plaintiff's patent. All this results in one conclusion that Exhibit 10 setting does not have a recess in the side walls thereof extending inwardly from the upper edge thereof as called for by claims 1 through 3 of the plaintiff's patent, nor does the setting have the equivalent of such structure.

In summation, what do we have: a ring manufactured by the defendant prior to 1959 which employed a ring shank, gem setting with prongs, a gem set in the gem setting and separate ornamental trim soldered to each side; in November of 1959, subsequent to plaintiff's patent, a change of manufacture by the defendant so as to employ a one piece trim and thus to enable it to make rings with ornaments connected by a strap employing the same gem setting it had been using prior to 1959; 1961 a change in said setting as hereinbefore described.

In order to have an infringement, the straps of the one piece trim would have to use a recess—this simply wasn't the case. The plaintiff's evidence fell far short of proving such allegation.

The cutting off of the prongs on the opposite edges of the gem setting in 1961

would have to be a recess or the equivalent thereof. It simply wasn't a recess. The opposite edges of the gem setting became straight walls without any recess and did not perform substantially the same function in substantially the same way to obtain the same results as the plaintiff's device; that is lock the one piece trim so as to align the auxiliary ornamental trim with each side of the ring shank. Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097.

The essence of the plaintiff's invention is the recess. He saw fit to claim it. The defendant did not use it.

The defendant achieved securing the auxiliary ornaments by means which did not employ the use of a recess and it is of no consequence that the results obtained by the two constructions were in all respects identical.

 The claims of the patent mark the limits of the invention claimed to have been made.

 The function of a patent claim is not merely to outline or summarize what is shown and described but rather to define the exact boundaries of the claimed invention—that is to determine with precision, or to work out clearly, the boundaries or limits of the claimed invention. Only patent claims can be infringed. Ludlow Manufacturing & Sales Co. v. Dolphin Jute Mills, Inc., D.C., 50 F.Supp. 395, 3 Cir., 145 F.2d 471.

"Precise claims are required, 'so that the public may know what they are prohibited from doing during the existence of the monopoly, and what they are to have at the end of the term, as a consideration for the grant.' * * * Judicial expansion of the coverage of the patent beyond the words of the claims might confer a greater monopoly than was justified in the light of the prior art * * *." Nelson v. Batson, 9 Cir., 322 F.2d 134.

 The claim of the plaintiff's patent is a recess and the use thereof. As stated in Hall-Mammoth Incubator Co. v.

Teabout (Supra), there is no infringement if the device omits some of the elements of the patent and employs no equivalent substitutes.

"It may be that the claim was unnecessarily specific, that elements which are unnecessary are found there and that the apparatus will operate without these elements. Concede all this and it does not aid the complainant. Hall saw fit to include in his combination all elements found in the claim. One who does not use that combination does not infringe."

So in this case, whatever the equities may be, the plaintiff sets forth a recess and the employment thereof as a vital and necessary part of its invention. In addition to the mountain of evidence hereinbefore discussed, one need only to say it is obvious from a reading of the invention and the testimony of Mr. Raymond Lutrario, its inventor.

The defendant achieved the same result by simply not using or employing a recess or any equivalent thereof.

In concluding this phase of the opinion, the court feels required to discuss the application of file wrapper estoppel.

The history of the prosecution of patent before the Patent Office (Exhibit A) was testified to in detail by Mr. Nicholas A. Pandiscio. It showed the inability of the plaintiff to get claims allowed that did not include the recess and its interrelation with the strap of the ornamental unit.

It was not until the plaintiff specifically defined the recess as "extending inwardly from the upper edge" of the setting side walls, and further recited that the strap extends "across said setting in said recesses" that the patent claims were allowed.

 The plaintiff is estopped from maintaining said features are not critical and further is estopped from applying the doctrine of equivalents. Graham et al. v. John Deere Co. of Kansas City et

**1018**

al., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545.

"Having asserted the novelty of the right angle principle in order to secure the patent, appellant cannot now expand his coverage to include other claims which were denied him in the proceedings before the patent office. This is simply the exercise of the doctrine of 'file wrapper estoppel' the gravamen of which is that an applicant who acquiesces in the rejection of his claim, and accordingly modifies it to secure its allowance, will not subsequently be allowed to expand his claim by interpretation to include the principles originally rejected or their equivalents." D & H Electric Company v. M. Stephens Mfg., Inc. et al., 9 Cir., 233 F.2d 879.

See—Lewis v. Avco Manufacturing Corporation et al., 7 Cir., 228 F.2d 919; Keith v. Charles E. Hires Co., 116 F.2d 46 (C.A.2), page 48.

▮ Plaintiff's burden is by a preponderance of evidence. Proof by a fair preponderance of the evidence means proof by the greater weight of the evidence. That is to say, by such evidence as when weighed with evidence offered to oppose it has more convincing power in the minds of the jury. Taking into account the lady of justice holding the scales in her hand, proof by a fair preponderance of the evidence is such proof as will tip the scale perceptibly in the mind's eye of the court.

The plaintiff has completely failed in this regard.

*It is the finding of this court* that plaintiff's Lutrario patent #2,835,117 was duly and lawfully issued by the United States Patent Office and is good and valid as to each of its claims numbered 1, 2 and 3.

▮ *It is the finding of this court* that the defendant did not infringe any of the claims of the patent in suit.

Pursuant to F.R.Civ.P. 41(b), the defendant's motion to dismiss the plaintiff's complaint is hereby granted.

The foregoing constitutes the court's findings of fact and conclusions of law in compliance with F.R.Civ.P. 52(a).

Counsel for the defendant will prepare an appropriate order conforming with this opinion.